LEON J. PAGE, COUNTY COUNSEL
SUZANNE E. SHOAI, SENIOR DEPUTY (SBN 232866)
suzy.shoai@coco.oc.gov
DANIEL L. RICHARDS, DEPUTY (SBN 315552)
daniel.richards@coco.oc.gov
400 West Civic Center Drive, Suite 202
Post Office Box 1379
Santa Ana, California 92702-1379
Telephone: (714) 834-3300
Facsimile: (714) 560-4552

Attorneys for Defendant,
ROBERT PAGE, in his official capacity as
Registrar of Voters for Orange County

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT PAGE, in his official capacity as Registrar of Voters for Orange County, California,<br><br>    Defendant. | Case No. 8:25-cv-01370-DOC-ADS<br><br>Assigned to Hon. David O. Carter<br><br>Magistrate Judge Hon. Autumn D. Spaeth<br><br>**DEFENDANT ROBERT PAGE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>[Filed concurrently with Declaration of Daniel L. Richards and [Proposed] Order]<br><br>DATE:      December 15, 2025<br>TIME:      8:30 a.m.<br>CTRM.:    10A, 10th Floor |

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 15, 2025, at 8:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable David O. Carter in Courtroom 10A of the above-entitled court, located at 411 W. Fourth Street, Santa Ana, California 92701, Defendant, Robert Page, in his official capacity as Registrar of Voters

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

for Orange County ("Defendant") will, and hereby does, move this Court for judgment on the pleadings against Plaintiff, United States of America ("Plaintiff"), on all causes of action in Plaintiff's Complaint. Dkt. 1.

This Motion is brought pursuant to Fed. R. Civ. P. 12(c) on the grounds there is no genuine issue of material fact in dispute, and Defendant is entitled to judgment as a matter of law. The grounds for this Motion are more fully articulated in the accompanying Memorandum of Points and Authorities in Support of Defendant's Motion for Judgment on the Pleadings.

This Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the attached Declaration of Daniel L. Richards; any materials submitted in reply to Plaintiff's opposition to this Motion; all other pleadings filed in this action; and upon any oral or documentary evidence allowed prior to or at the time of the hearing of this Motion.

This Motion is made following an L.R. 7-3 conference of counsel held on October 31, 2025. Declaration of Daniel L. Richards (Richards Decl.) at ¶ 2. During that conference, counsel for Plaintiff indicated Plaintiff opposes the motion.

Respectfully submitted,

LEON J. PAGE, COUNTY COUNSEL
SUZANNE E. SHOAI, SENIOR DEPUTY
DANIEL L. RICHARDS, DEPUTY

DATED: November 14, 2025     By:   /s/ *Suzanne E. Shoai*
                                   Suzanne E. Shoai, Senior Deputy

                                   Attorneys for Defendant
                                   ROBERT PAGE, in his official capacity as
                                   Registrar of Voters for Orange County

DEFENDANT ROBERT PAGE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT
ON THE PLEADINGS

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# **TABLE OF CONTENTS**

**Page No.**

DEFENDANT ROBERT PAGE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS ........................................................................... i

TABLE OF CONTENTS .......................................................................................... iii

TABLE OF AUTHORITIES ........................................................................................ v

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.     INTRODUCTION ......................................................................................... 1

II.    RELEVANT BACKGROUND ..................................................................... 2

       A.    Plaintiff Requests Records from Defendant Relating to Voter Registrations That Were Cancelled Due to Citizenship ........................ 2

       B.    Defendant Produces All Responsive Records, But Redacts Sensitive Personal Information That it Is Prohibited From Disclosing ..................... 2

       C.    This Lawsuit ..................................................................................... 3

III.   LEGAL STANDARD .................................................................................... 3

IV.    ARGUMENT ................................................................................................. 5

       A.    Defendant Is Entitled to Judgment of the Pleadings on Plaintiff's Claim Under the NVRA ................................................................... 5

             1.    Courts have Repeatedly Held that the NVRA Does not Prohibit Reasonable Redactions to Protect Uniquely Sensitive Personal Information ............................................................. 6

             2.    There Is No Conflict Between California Privacy and Confidentiality Statutes and the NVRA, and so the NVRA Does not Preempt California Law ...................................... 12

             3.    Plaintiff's Interpretation Is Contrary to the Core Purposes of the NVRA and Risks Chilling the Exercise of the Right to Vote ............ 15

DEFENDANT ROBERT PAGE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

# TABLE OF CONTENTS (continued)

Page No.

4. Defendant Is Entitled to Judgment Because He Complied with the NVRA and Produced All Available Records and Only Redacted Uniquely Sensitive Information Protected by State Law ................... 18

B. Defendant Is Entitled to Judgment on the Pleadings on Plaintiff's HAVA Claim, Because HAVA Does Not Authorize Direct Federal Access to Voter Data .......................................................................................................... 21

C. The Court Should Consider the State's Position in the Related *U.S.A. v. Weber* Matter ................................................................................................. 24

V. CONCLUSION ........................................................................................................ 25

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

DEFENDANT ROBERT PAGE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

**Page No**

**Cases**

*Am. Acad. of Pediatrics v. Lungren*,
    16 Cal.4th 307 (1997) ................................................................................16

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
    570 U.S. 1 (2013)........................................................................................21

*Arizona v. United States*,
    567 U.S. 387 (2012)....................................................................................12

*Babb v. California Tchrs. Ass'n*,
    378 F.Supp.3d 857 (C.D. Cal. 2019) .........................................................16

*Butler v. Resurgence Fin., LLC*,
    521 F.Supp.2d 1093 (C.D. Cal. 2007) .........................................................4

*ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*,
    660 F.Supp.3d 822 (D. Alaska 2023) ...........................................................4

*Crosby v. Natl Foreign Trade Council*,
    530 U.S. 363 (2000)....................................................................................12

*Gonzales v. Goodyear Tire & Rubber Co.*,
    2006 WL 8444095 (D.N.M. July 28, 2006) ..............................................17

*Gonzalez v. Arizona*,
    677 F.3d 383 (9th Cir. 2012) ...............................................................21, 22

*Greidinger v. Davis*,
    988 F.2d 1344 (4th Cir. 1993) ...................................................................17

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) .......................................................................4

*Hell's Angels Motorcycle Corp. v. Cnty. of Monterey*,
    89 F.Supp.2d 1144 (N.D. Cal. 2000)..........................................................24

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

DEFENDANT ROBERT PAGE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF AUTHORITIES (continued)

**Page No**

*Hell's Angels Motorcycle Corp. v. McKinley*,

    354 F.3d 1000 (9th Cir. 2004) ....................................................24

*Husted v. A. Philip Randolph Inst.*,

    138 S. Ct. 1833 (2018)..................................................................15

*In re Crawford*,

    194 F.3d 954 (9th Cir. 1999) ......................................................17

*In re Nat'l Sec. Letter*,

    863 F.3d 1110 (9th Cir. 2017) ....................................................23

*Knappenberger v. City of Phoenix*,

    566 F.3d 936 (9th Cir. 2009) ........................................................4

*Lockyer v. City & Cnty. of San Francisco*,

    33 Cal.4th 1055 (2004) ...............................................................19

*Marder v. Lopez*,

    450 F.3d 445 (9th Cir. 2006) ........................................................4

*Mays v. Wal-Mart Stores, Inc.*,

    354 F.Supp.3d 1136 (C.D. Cal. 2019) ..........................................4

*People v. Zgurski*,

    73 Cal.App.5th 250 (2021) .........................................................20

*Project Vote, Inc. v. Kemp*,

    208 F.Supp.3d 1320 (N.D. Ga. 2016)..........................7, 9, 10, 16

*Project Vote/Voting for Am., Inc. v. Long*,

    682 F.3d 331 (4th Cir. 2012) ......................................................11

*Project Vote/Voting For Am., Inc. v. Long*,

    752 F.Supp.2d 697 (E.D. Va. 2010) ...........................10, 11, 17

*Project Vote/Voting For Am., Inc. v. Long*,

    813 F.Supp.2d 738 (E.D. Va. 2011) ...........................................11

DEFENDANT ROBERT PAGE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT
ON THE PLEADINGS

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

## <u>TABLE OF AUTHORITIES (continued)</u>

**Page No**

*Pub. Int. Legal Found., Inc. v. Dahlstrom*,

    673 F.Supp.3d 1004 (D. Alaska 2023) ...................................................12

*Pub. Int. Legal Found., Inc. v. Griswold,*

    2023 WL 6376706 (D. Colo. Sept. 29, 2023) .......................................11

*Pub. Int. Legal Found., Inc. v. Knapp*,

    749 F.Supp.3d 563 (D.S.C. 2024) .........................................................13

*Pub. Int. Legal Found., Inc. v. Matthews*,

    589 F.Supp.3d 932 (C.D. Ill. 2022) ......................................................12

*Pub. Int. Legal Found., Inc. v. N. Carolina State Bd. of Elections*,

    996 F.3d 257 (4th Cir. 2021) ...................................................................9

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,

    996 F.3d 257 (4th Cir. 2021) .................................................................15

*Purdy v. Burlington N. & Santa Fe Ry. Co.*,

    2000 WL 34251818 (D. Minn. Mar. 28, 2000) ....................................17

*Reeves v. Hogle*,

    2006 WL 572708 (W.D. Mich. Mar. 8, 2006) ......................................17

*Sherman v. U.S. Dep't of Army*,

    244 F.3d 357 (5th Cir. 2001) .................................................................17

*Silvers v. Sony Pictures Ent., Inc.*,

    402 F.3d 881 (9th Cir. 2005) ...........................................................13, 22

*Thomas v. Smith*,

    882 So. 2d 1037 (Fla. Dist. Ct. App. 2004)...........................................18

*True the Vote v. Hosemann*,

    43 F.Supp.3d 693 (S.D. Miss. 2014) ...............................................passim

*United States v. Ritchie*,

    342 F.3d 903 (9th Cir. 2003) ...................................................................4

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

DEFENDANT ROBERT PAGE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1

## <u>TABLE OF AUTHORITIES (continued)</u>

2

<u>Page No</u>

3 *United States v. Stephens*,

4          237 F.3d 1031 (9th Cir. 2001) ..................................................................4

5 *Valle del Sol Inc. v. Whiting*,

6          732 F.3d 1006 (9th Cir. 2013) ........................................................12, 13

7 *Welker v. Clarke*,

8          239 F.3d 596 (3d Cir. 2001) ...........................................................15, 21

9 *Whitman v. Am. Trucking Associations*,

10          531 U.S. 457, 468 (2001) .......................................................................14

11 *Zink v. Commonwealth*,

12          902 S.W.2d 825 (Ky. Ct. App. 1994) ....................................................18

13 **Statutes**

14 5 U.S.C. § 552 ..................................................................................10, 14

15 5 U.S.C. § 552a ................................................................................10, 14

16 18 U.S.C. § 2725 .....................................................................................20

17 42 U.S.C. § 1973 ..............................................................................10, 14

18 52 U.S.C. § 20501(a) ...............................................................................16

19 52 U.S.C. § 20501(b)(1)–(2) ...................................................................15

20 52 U.S.C. § 20504 ....................................................................................15

21 52 U.S.C. § 20507 ............................................................................passim

22 52 U.S.C. § 20507(a)(4) .............................................................................5

23 52 U.S.C. § 20507(b) .................................................................................5

24 52 U.S.C. § 20507(i) ..................................................................................6

25 52 U.S.C. § 20507(i)(1) ...........................................................................13

26 52 U.S.C. § 20507(i)(2) .....................................................................8, 13

27 52 U.S.C. § 20901 ....................................................................................19

28 52 U.S.C. § 21083 ............................................................................passim

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

DEFENDANT ROBERT PAGE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT
ON THE PLEADINGS

# TABLE OF AUTHORITIES (continued)

Page No

52 U.S.C. § 21083(a)(3) ................................................................................. 23

52 U.S.C. § 21085 ........................................................................................... 22

52 U.S.C. § 21111 ........................................................................................... 23

52 U.S.C. § 21081 ........................................................................................... 23

52 U.S.C. § 21083(a)(1)(A) ............................................................................ 22

Cal. Civ. Code § 1798.82 ............................................................................... 20

Cal. Elec. Code § 2194(b) ................................................................... 7, 13, 19

Cal. Elec. Code § 2194(b)(2) .......................................................................... 19

Cal. Gov. Code § 7922.200 ............................................................................. 14

Cal. Gov. Code § 7924.000 .................................................................... 7, 13

Cal. Gov. Code § 7924.000(a) ......................................................................... 19

Cal. Gov. Code § 7924.000(b) .................................................................. 19, 20

Cal. Gov. Code § 7924.005 ................................................................... 7, 13

Cal. Gov. Code § 7924.005(a) ......................................................................... 19

Miss. Code § 23–15–165(1) .............................................................................. 7

**Other Authorities**

H.R. Rep. No. 103-9 (1993) ..................................................................... 15, 16

S. Rep. No. 103-6 (1993) ................................................................................ 15

**Rules**

Cal. R. Ct. 10.430 ........................................................................................... 20

Fed. R. Civ. P. 12(c) ......................................................................................... 3

Fed. R. Civ. Proc. 52(a) ................................................................................. 10

**Regulations**

Cal. Code Regs. tit. 2, § 19060(a) ................................................................. 22

**Constitutions**

U.S. Const. Art. I, § 4, cl. 1 ........................................................................... 13

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

DEFENDANT ROBERT PAGE'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff, United States of America, acting through the U.S. Department of Justice (USDOJ), requested that Defendant, Robert Page, the Registrar of Voters for the County of Orange, produce records regarding registered voters in Orange County who were cancelled because the registrant did not satisfy the citizenship requirements for voter registration. The request was not made through a subpoena or a search warrant, but through a letter from an attorney in the USDOJ.

Defendant produced all responsive records relating to individuals who fell within the scope of the request pursuant to the National Voter Registration Act's (NVRA), 52 U.S.C. § 20507, public disclosure provisions. However, as required by California State law and as permitted in numerous federal cases interpreting the NVRA's public disclosure provisions, Defendant redacted sensitive personal information including California driver's license and identification card numbers, social security numbers, California Secretary of State-assigned voter identification numbers, language preference, and images of registrants' signatures. Plaintiff demanded unredacted copies and threatened to sue if Defendant did not immediately heed its demand. Defendant chose to comply with the law and this suit followed.

As explained below, Defendant is entitled to judgment on the pleadings on Plaintiff's claim for relief under the NVRA because Defendant produced responsive records regarding its voter registration activities to Plaintiff and only redacted sensitive personal information that Defendant is expressly required to protect from disclosure by State statute. Such redactions are permissible under the NVRA's public disclosure provisions. Indeed, every court that has considered the NVRA's public disclosure provisions has recognized that Congress intended to limit the disclosure of confidential information like the information redacted by Defendant.

Defendant is also entitled to judgment on the pleadings on Plaintiff's claim for relief under the Help America Vote Act (HAVA), 52 U.S.C. § 21083, because unlike

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

1    the NVRA, HAVA does not contain any record disclosure provisions, let alone any

2    provisions that require elections officials to produce sensitive personal information to

3    Plaintiff without a subpoena, search warrant, or any protection against public disclosure.

4    ## II.    RELEVANT BACKGROUND

5    ### A.    Plaintiff Requests Records from Defendant Relating to Voter

6    Registrations That Were Cancelled Due to Citizenship

7    On June 2, 2025, Plaintiff sent Defendant a letter requesting the following

8    records:

9        1.    Records from January 1, 2020, to the present showing

10    the number of voter registration records in Orange County

11    cancelled because the registrant did not satisfy the citizenship

12    requirements for voter registration.

13        2.    Records from January 1, 2020, to the present related to

14    each cancellation described in Request No. 1, including copies

15    of each registrant's voter registration application, voter

16    registration record, voting history, and related correspondence

17    sent or received by the County of Orange Registrar of Voters

18    in regard to the registration.

19    Dkt. 1 ¶ 19, Ex. 1; Dkt. 9 ¶ 19, Ex. A. The request was not accompanied by a search

20    warrant or subpoena. Dkt. 9 ¶ 19.

21    ### B.    Defendant Produces All Responsive Records, But Redacts Sensitive

22    Personal Information That it Is Prohibited From Disclosing

23    Defendant complied with the request and produced responsive records pertaining

24    to the individuals whose registration was cancelled because the registrant did not satisfy

25    the citizenship requirements for voter registration.[1] Dkt. 1 ¶ 20; Dkt. 9 ¶ 20, Ex. B.

26    However, Defendant redacted sensitive personal information from the records, including

27    

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

---

28    [1] These records could include individuals who renounced their citizenship and were no longer eligible to vote even if they were eligible to vote before renouncing.

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

California driver's license and identification card numbers, social security numbers, California Secretary of State assigned voter identification numbers, language preference, and images of registrants' signatures. *Id.* In its response, Defendant listed the statutes that barred Defendant from publicly disclosing the redacted information. Dkt. 9 ¶ 20, Ex. B.

On June 17, 2025, Plaintiff sent Defendant a letter acknowledging receipt of records responsive to its request but demanding that Defendant produce unredacted copies of the records. Dkt. 1 ¶ 21; Dkt. 9 ¶ 21, Ex. C. Plaintiff stated that if Defendant failed to provide the unredacted records, Plaintiff would file a lawsuit no later than Tuesday, June 24, 2025. Dkt. 1 ¶¶ 21, 28; Dkt. 9 ¶¶ 21, 28, Ex. C.

On June 20, 2025, Defendant's counsel responded in writing to Plaintiff identified the specific statutory bases for Defendant's redactions and asked Plaintiff for legal authority that requires the production of the sensitive information unredacted without a subpoena and without any protection from public disclosure. Dkt. 1 ¶ 28; Dkt. 9 ¶ 28, Ex. D. On June 23, 2025, Defendant's counsel provided additional assistance to Plaintiff to access the records that Defendant had produced and further attempted to explore avenues for complying with Plaintiff's request without subjecting sensitive personal information of individuals to public disclosure. Dkt. 1 ¶ 29; Dkt. 9 ¶ 29.

### C.  This Lawsuit

On June 25, 2025, Plaintiff filed the present lawsuit asserting two claims for relief against Defendant based on alleged violations of HAVA, 52 U.S.C. § 21083, and the NVRA, 52 U.S.C. § 20507. Dkt. 1 ¶¶ 34–44. Both claims for relief are based on Defendant's redaction of sensitive, personal information as required by California State law from the records that Defendant produced to Plaintiff. Dkt. 1 ¶¶ 30, 38, 43.

### III.  <u>LEGAL STANDARD</u>

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

is entitled to judgment as a matter of law." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 939 (9th Cir. 2009) (internal quotation marks omitted). That does not mean that "conclusory allegations and unwarranted inferences are sufficient to defeat a motion for judgment on the pleadings." *Butler v. Resurgence Fin., LLC*, 521 F.Supp.2d 1093, 1095 (C.D. Cal. 2007). They are not. *Id.* "The standard applied on a Rule 12(c) motion is essentially the same as that applied on [a] motion to dismiss pursuant to the Federal Rule of Civil Procedure 12(b)(6)." *Id.* "A Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim." *Mays v. Wal-Mart Stores, Inc.,* 354 F.Supp.3d 1136, 1141 (C.D. Cal. 2019).

Further, the court "may consider facts that are contained in materials of which the court may take judicial notice," *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 (9th Cir. 1999), or evidence on which the "complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the . . . motion," *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The Court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true[.]'" *Id.* (*quoting United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

Plaintiff's claims turn on pure issues of law – statutory interpretation and principles of preemption – and are, therefore, suitable for resolution through a motion for judgment on the pleadings. *See, e.g., ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Commission*, 660 F.Supp.3d 822, 840 (D. Alaska 2023) ("The Court finds that the preemption issue in this case is a pure question of law that requires no additional factfinding to determine."); *United States v. Stephens*, 237 F.3d 1031, 1033 (9th Cir. 2001) ("The proper interpretation of a statute is a question of law.")

///

///

///

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

IV.  **ARGUMENT**

    A.    **Defendant Is Entitled to Judgment on the Pleadings on Plaintiff's Claim Under the NVRA**

    The NVRA imposes on states the obligation to conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant or a change in the residence of the registrant. 52 U.S.C. § 20507(a)(4). Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973 *et seq.*)" and "shall not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote," except where the person has not responded to a notice sent by the applicable registrar and "has not voted or appeared to vote in 2 or more consecutive general elections for Federal office." 52 U.S.C. § 20507(b).

    The NVRA also provides for the public disclosure of each state's "voter registration activities" by making certain records available for public inspection:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and where available, photocopying at a reasonable cost all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered
>
> (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

whom notices described in [address verification] subsection

(d)(2) are sent, and information concerning whether or not

each such person has responded to the notice as of the date

that inspection of the records is made.

*Id.* § 20507(i). (hereinafter, the "Public Disclosure Provisions")

Here, Plaintiff's claims do not turn on the scope of records that may be subject to the NVRA's Public Disclosure Provisions – Plaintiff alleges and Defendant admits that categories of records requested were subject to the NVRA, and that all requested records were produced to Plaintiff. Dkt. 1 at ¶¶ 20, 30, 38, 43; Dkt. 9 at ¶ 20.

Rather, Plaintiff's NVRA claims turn on narrower questions of law – (1) whether the NVRA expressly prohibits the redaction of individual voters' uniquely sensitive personal information, and (2) whether the NVRA preempts state statutes that impose a mandatory duty on state election officials to safeguard the confidential information of voters and protect the statutorily based reasonable expectation of privacy voters have in their social security numbers, signatures, language proficiency, drivers' licenses, and similar data. Dkt. 1 at ¶¶ 20, 30, 38, 43.

As courts throughout the country have repeatedly held, and as common sense and constitutional principles dictate, the NVRA neither prohibits the redaction of sensitive personal information nor preempts state laws that require such sensitive personal information be kept confidential.

## 1. Courts have Repeatedly Held that the NVRA Does not Prohibit Reasonable Redactions to Protect Uniquely Sensitive Personal Information

The NVRA, by its terms, neither prohibits nor requires the redaction of information in otherwise disclosable "Voter Registration Activity" records. In the face of this congressional silence, courts have routinely held that the NVRA allows redaction of certain sensitive voter information. As courts have noted, there is a distinction between (1) making an identifiable record available; and (2) redacting discrete

confidential information contained within a given record. The former is required by the NVRA, while the latter is permitted. *See, e.g., True the Vote v. Hosemann*, 43 F.Supp.3d 693, 733 (S.D. Miss. 2014) (*True the Vote*).

Indeed, "[t]hat Congress intended to limit certain confidential information from disclosure has been recognized *by every court* that has considered Section 8(i)." *Project Vote, Inc. v. Kemp*, 208 F.Supp.3d 1320, 1345 (N.D. Ga. 2016) (emphasis added). For example, in *True the Vote,* 43 F.Supp.3d at 735, the plaintiffs sought "unredacted voting records from [the November 2014 U.S. Senate] election pursuant to the NVRA Public Disclosure Provision." *Id.* at 700. In an almost precise parallel to the facts here, the defendants in that case refused to produce certain unredacted records, primarily on the grounds that "Mississippi law requires redaction of certain personal voter registrant information from the records before they are publicly disclosed." *Id.*

The "seminal legal question" before the *True the Vote* court, like the key question before this Court, was whether "the NVRA allows redaction of any information within [disclosable] records and, if not, whether the NVRA preempts Mississippi law prohibiting disclosure of certain information." *Id.* at 729. As this Court should, the *True the Vote* court ultimately concluded that "the NVRA Public Disclosure Provision does not require automatic public disclosure" of information protected by Mississippi law, and so "the NVRA does not preempt Mississippi law." *Id.*

In *True the Vote,* the relevant Mississippi statutes prohibited disclosure of "Social security numbers, telephone numbers and date of birth and age information." *Id.* at 731 (*citing* Miss. Code § 23–15–165(1); *compare with* Cal. Elec. Code § 2194(b) and Cal. Gov. Code §§ 7924.000 and 7924.005). The plaintiffs argued that those provisions of Mississippi law were preempted by the NVRA. While agreeing that Congress *can* elect to preempt certain state election laws under the Elections Clause of the U.S. Constitution, the *True the Vote* court noted that the key question is *whether* Congress has done so. Resolution of this question turned on "whether the NVRA mandates disclosure of unredacted documents, thereby overriding voter registrants' privacy

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

1    interests." *Id.* at 732.

2         The Court concluded that while the NVRA's broad language required disclosure

3    of a wide *range* of documents, that same language did not require disclosure of all

4    *information* within the required documents. *Id*. at 733. In analyzing the language of the

5    statute (formally codified as 42 U.S.C. 1973gg–6(i)(1)), the court opined:

6              The Public Disclosure Provision requires States to make

7              available for inspection 'all records' concerning voter

8              registration and ineligible voter removal programs and

9              activities. *See* 42 U.S.C. § 1973gg–6(i)(1). The modifier 'all'

10             is meant to expand the range of documents produced. The

11             term 'all records' does not require automatic disclosure of all

12             *information* within the covered records. Congress's language

13             in the Public Disclosure Provision does not preclude redaction

14             of certain highly sensitive information contained within

15             disclosable records.

16   *Id.* (emphasis in original).

17         Noting that "there is no restriction in the NVRA as to who may request records

18   under that law and no limit on the requesters' use or further dissemination of the

19   information once disclosed," the *True the Vote* court explained that reading the

20   disclosure provision to preclude any redactions (1) would be inconsistent with related

21   provisions of the NVRA, including section 1973gg-6(i) (currently, 52 U.S.C. §

22   20507(i)(2)) "which does not mandate disclosure of SSNs or birthdates, despite the

23   potential utility of that information in identifying registrants' identities;" (2) would

24   render a nullity related statutes requiring certain voter related records be kept

25   confidential; and (3) would contradict a host of federal and state laws that "generally

26   guard against disclosure of sensitive personal information . . . create[ing] a gaping hole

27   in the statutory landscape whereby personal, otherwise protected information would lose

28   its protection once a citizen registered to vote." *Id.* at 734–735; *see also id.* at 735 ("It is

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-8-

**DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

hard to imagine that in enacting the NVRA, Congress intended to abrogate all protections provided for by Federal and State laws against the disclosure of private and confidential information."). Based on this analysis, the *True the Vote* court concluded that the NVRA does not mandate the disclosure of "highly personal and sensitive information" like social security numbers and birthdates. *Id.* at 735–736.

In support of this conclusion, the *True the Vote* court also explained that disclosure of highly sensitive personal information would make voters "understandably" hesitant to register to vote, and thus would be antithetical to "NVRA's purpose and historical bases for enactment, and would have the opposite effect than Congress intended." *Id.* at 739; *see also id.* ("There is no indication in the NVRA's legislative history that Congress intended to open up for inspection information within those records that is otherwise protected as personal information under other Federal or State laws.").

In *Pub. Int. Legal Found., Inc. v. N. Carolina State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021) (*Pub. Int. Legal Found.*) the plaintiff sought a variety of voter registration related records, including records related to the North Carolina "noncitizen audit process." *Id.* at 263. The question before the Fourth Circuit was whether the defendant could withhold from disclosure "sensitive information subject to potential abuse." *Id.* at 264. Like the *True the Vote* court, the Fourth Circuit confirmed that "uniquely sensitive information" may be redacted from "otherwise disclosable documents." *Id.* at 267; *see also id.* at 267–268 (Approving of proposal by defendant to "devise a system of redaction to apply to requested voter registration applications and corresponding documents to the extent they are subject to disclosure" in order to prevent "potential embarrassment or harassment.")

In *Project Vote, Inc. v. Kemp*, 208 F.Supp.3d 1320 (N.D. Ga. 2016) (*Kemp*), the plaintiff sought records "relating to the reasons Defendant rejected, canceled, or otherwise did not add voter registration applicants to Georgia's voter roll." *Id.* at 1323–1324. After conducting a detailed analysis of the statutory language in the NVRA's

Public Disclosure Provisions, the broader context of the NVRA statutory scheme, the statutory purposes of the NVRA, and legislative history, the *Kemp* court concluded that while the requested records were subject to the NVRA, the NVRA did not require "the disclosure of sensitive information that implicates special privacy concerns." *Id.* at 1335–1344.

As the *Kemp* court noted, the fact that the second paragraph of the Public Disclosure Provisions requires only the disclosure of "the names and addresses" of certain applicants "suggests other types of information may be protected from [the NVRA's] disclosure requirement." *Id.* at 1344; *see also id.* ("If redaction of certain sensitive information is not permitted, Section 8(i) [of the NVRA, now codified as 52 U.S.C. § 20507(i)] would effectively provide any individual unfettered access to sensitive information the Civil Rights Act of 1960 prevents even the Attorney General from disclosing. Allowing disclosure of unredacted voter applications is inconsistent also with Congress's concern for individual privacy evidenced in Federal statutes, including statutes such as the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq., the Freedom of Information Act, 5 U.S.C. § 552 et seq., and the Privacy Act of 1974, 5 U.S.C. § 552a et seq.); *id.* at 1344–1345 ("[T]he Federal Rules of Civil Procedure also express a preference for the privacy of personal information about individuals by allowing redaction of social security numbers, an individual's birth year, a minor's full name, and financial account and taxpayer-identification numbers.") (*citing* Fed. R. Civ. Proc. 52(a)). Finally, the court noted that Georgia law protects the confidentiality of sensitive information (e.g., social security numbers), and concluded that "it is illogical that in enacting the NVRA, Congress intended to erode Federal and State law protecting against the disclosure of private, personal information." *Id.* at 1345. The court held that appropriate redactions include (1) social security numbers, (2) telephone numbers, (3) and emails. *Kemp*, 208 F.Supp.3d at 1345.

In *Project Vote/Voting For Am., Inc. v. Long*, 752 F.Supp.2d 697, 699 (E.D. Va. 2010) (*Long*), the plaintiff sought "the completed voter registration applications" for

OFFICES OF THE COUNTY COUNSEL COUNTY OF ORANGE

certain categories of voters. *Id.* at 699. In denying a motion to dismiss, the *Long* court first determined that the voter registration applications were a category of record subject to the NVRA's Public Disclosure Provisions. *Id.* at 705–710. The *Long* court nevertheless concluded that "a person's SSN [social security number] is precluded from disclosure, as disclosure of that information would undermine the purposes of the statute." *Id.* at 711. The Long court explained:

> SSNs are uniquely sensitive and vulnerable to abuse, such that a potential voter would understandably be hesitant to make such information available for public disclosure. For that reason, a SSN disclosure requirement potentially undermines the voter registration goals of the NVRA. Accordingly, the court finds that the NVRA does not require such disclosure, and any voter registration application containing an applicant's SSN should be redacted before public exposure of the application. The court finds such an interpretation consistent with existing precedent construing federal statutes that provide a right to information.

*Id.* at 711–712; *see also Project Vote/Voting For Am., Inc. v. Long*, 813 F.Supp.2d 738 (E.D. Va. 2011) (granting summary judgment to plaintiff in same lawsuit, but reiterating that social security numbers may be redacted); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming judgment requiring production of records, but confirming propriety of redacting social security numbers and noting that with such redactions "there is no danger that this uniquely sensitive information will be compromised").

A number of other courts across the country have similarly concluded that the NVRA permits redaction of sensitive personal information. *See, e.g., Pub. Int. Legal Found., Inc. v. Griswold,* 2023 WL 6376706, at *6 (D. Colo. Sept. 29, 2023) ("To construe the DPPA and the NVRA consistently, the Court 'can order redaction of

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

'uniquely sensitive information' in otherwise disclosable documents.'"); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F.Supp.3d 932, 942 (C.D. Ill. 2022) ("[T]he Public Disclosure Provision also does not require the disclosure of sensitive information that implicates those privacy concerns") (internal quotations and alterations omitted); *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F.Supp.3d 1004, 1016 (D. Alaska 2023) ("[A]ny potential conflict between the NVRA and the Bipartisan Budget Act of 2013 likely can be harmonized by requiring the exclusion of sensitive personal information in the Death Master File from the scope of the NVRA's disclosure provision. This requirement respects the balance that Congress struck between the transparency of states' voter registration processes and individual voter's privacy interests.")

As courts across the county have concluded, an election official may property redact uniquely sensitive personal information. This is precisely what Defendant did. Further, even setting aside this wall of precedent and the persuasive statutory interpretation and analysis of congressional intent on which they are based, sound public policy and principles of preemption support the limited redactions made by Defendant.

2. **There Is No Conflict Between California Privacy and Confidentiality Statutes and the NVRA, and so the NVRA Does not Preempt California Law**

Congress has the power to preempt state law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Such preemption comes in three forms: express preemption, field preemption, and conflict preemption. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013). Express preemption arises "when the text of a federal statute explicitly manifests Congress's intent to displace state law." *Id.* (citation omitted). Field and conflict preemption, on the other hand, are types of implied preemption. Field preemption prohibits state regulation of "conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Id.* (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). Finally, even where Congress has not occupied the field, conflict preemption

1    arises when state law conflicts with a federal statute. *Id.* at 1023

2        Here, it is undisputed that California law prohibits the disclosure of the

3    information Defendant redacted. Cal. Elec. Code § 2194(b); Cal. Gov. Code §§

4    7924.000, 7924.005. The fact "[t]hat Congress *may* enact laws preempting conflicting

5    State laws does not mean, . . . that it necessarily intends to do so in the regular course or

6    that its legislation in the field of elections should be read more broadly than Congress

7    intended." *True the Vote*, 43 F.Supp.3d at 731; *see also Pub. Int. Legal Found., Inc. v.*

8    *Knapp*, 749 F.Supp.3d 563, 571 (D.S.C. 2024) ("[W]hen considering Elections Clause

9    legislation, 'the reasonable assumption is that the statutory text accurately

10   communicates the scope of Congress's pre-emptive intent.'") Indeed, absent evidence of

11   an intent to preempt state law, the Constitution's election clause provides that the time,

12   place and manner "of holding Elections for Senators and Representatives, shall be

13   prescribed in each State by the Legislature thereof …" U.S. Const. Art. I, § 4, cl. 1.

14       The text of the NVRA's Public Disclosure Provisions evinces no Congressional

15   intent to displace the numerous federal and state laws providing protections to uniquely

16   sensitive voter information. Indeed, while the text of § 20507(i)(1) applies to a very

17   broad scope of records ("all records concerning the implementation . . . ."), it only

18   expressly mandates the disclosure of a very narrow scope of information in those

19   records – to wit, "the names and addresses" of a certain class of voters. *Id.* at §

20   20506(i)(2). The fact that Congress mandated the disclosure of limited categories of

21   information strongly suggests that the production of other information is not required

22   (particularly when such information is sensitive personal information). *See True the*

23   *Vote*, 43 F.Supp.3d at 734; *see also Silvers v. Sony Pictures Ent., Inc*., 402 F.3d 881,

24   885 (9th Cir. 2005) (The doctrine of *expressio unius est exclusio alterius* as applied to

25   statutory interpretation creates a presumption that when a statute designates certain

26   persons, things, or manners of operation, all omissions should be understood as

27   exclusions).

28       As the court in *True the Vote* court noted, "the Public Disclosure Provision was

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-13-
DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

1    not drafted in a vacuum." *True the Vote*, 43 F.Supp.3d at 736. Rather, when the NVRA

2    was enacted in 1993, Congress had already enacted the Voting Rights Act of 1965,

3    Freedom of Information Act, and Privacy Act of 1974, all of which contain protections

4    for sensitive personal information. *Id*. at 735 (*citing* 42 U.S.C. § 1973 *et seq.*, 5 U.S.C. §

5    552 *et seq.*, 5 U.S.C. § 552a *et seq.*). Additionally, the NVRA was enacted nearly thirty

6    years after California first enacted its Public Record Act in 1968, and years after many

7    other states enacted similar statues, all of which protect uniquely sensitive information

8    like social security numbers. *See id.* at fn. 199; *see also* Cal. Gov. Code § 7922.200

9    ("[I]n order to protect against the risk of identity theft, a local agency shall redact social

10   security numbers from a record before disclosing the record to the public pursuant to

11   this division.").

12       If Congress had intended to strip these broad and longstanding statutory

13   confidentiality rights, representing decades of legislative determinations and balancing

14   of interests by the federal government and the fifty states' legislatures – and more

15   pointedly to strip these protections from only those citizens seeking to exercise the right

16   to vote – it is reasonable to assume that Congress would have more clearly expressed

17   such an extraordinary and disruptive intent. *See Whitman v. Am. Trucking Associations*,

18   531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental

19   details of a regulatory scheme in vague terms or ancillary provisions—it does not, one

20   might say, hide elephants in mouseholes.") This is all the more true in light of the

21   undeniable reliance interests voters hold in voter confidentiality statutes – generations of

22   voters have registered to vote secure in the knowledge that the confidentiality of their

23   social security numbers and other sensitive personal information was not forfeited

24   through the simple act of registering to vote.

25       No intent to revoke these rights is apparent from the straightforward language of

26   the Public Disclosure Provisions. *True the Vote v. Hosemann*, 43 F.Supp.3d 693, 735

27   (S.D. Miss. 2014) ("It is hard to imagine that in enacting the NVRA, Congress intended

28   to abrogate all protections provided for by Federal and State laws against the disclosure

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

of private and confidential information.")

### 3. Plaintiff's Interpretation Is Contrary to the Core Purposes of the NVRA and Risks Chilling the Exercise of the Right to Vote

"One of the NVRA's central purposes was to dramatically expand opportunities for voter registration[.]" *Welker v. Clarke*, 239 F.3d 596, 598–99 (3d Cir. 2001) (*Welker*) (citation omitted).

The NVRA largely achieves this purpose by requiring states to offer the opportunity to register to vote at certain government offices. *See* 52 U.S.C. § 20504 *et seq.*; *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 264 (4th Cir. 2021). However, the unfettered public disclosure of social security numbers, driver's license numbers, language preferences, and other sensitive information that is vulnerable to abuse would contravene this core purpose and discourage voter registration.

In the NVRA itself, Congress identified the purposes of the statute to include the establishment of "procedures that will *increase the number of eligible citizens who register to vote* in elections for Federal office" and helping federal, state, and local governments implement those procedures "in a manner that enhances the participation of eligible citizens as voters in elections for Federal office." 52 U.S.C. § 20501(b)(1)–(2) (emphases added); *see also* H.R. Rep. No. 103-9, at 3 (1993) ("[F]ailure to become registered is the primary reason given by eligible citizens for not voting"). Congress enacted the NVRA "mindful that 'the purpose of our election process is not to test the fortitude and determination of the voter, but to discern the will of the majority.'" *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1850–51 (2018) (Breyer, J., dissenting) (quoting S. Rep. No. 103-6, at 3 (1993)).

In the NVRA, Congress made findings that confirm the statute's purpose is to promote the exercise of the right to vote: "(1) the right of citizens of the United States to vote is a fundamental right; (2) it is the duty of the Federal, State, and local governments to promote the exercise of that right; and (3) discriminatory and unfair

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a). Congress recognized that it had "the authority and responsibility to make the registration process for Federal elections as accessible as possible while maintaining the integrity of the electoral process" and that "low voter turnout in Federal elections poses potential serious problems in our democratic society." H.R. Rep. No. 103-9, at 3 (1993).

Nothing in the Public Disclosure Provisions mandates (or permits) the dissemination of uniquely sensitive voter information, particularly when that information could incidentally or purposefully be used to discourage voter engagement and undermine the NVRA's fundamental purpose. Again, "[t]hat Congress intended to limit certain confidential information from disclosure has been recognized by every court that has considered the NVRA." *Kemp*, 208 F.Supp.3d at 1345.

There is certainly no language in the NVRA suggesting the statute was intended to override individuals' reasonable expectation of privacy, which is afforded particularly strong protection under the California Constitution. *Babb v. California Tchrs. Ass'n*, 378 F.Supp.3d 857, 885 (C.D. Cal. 2019) ("The scope and application of the [California] state constitutional right of privacy is broader and more protective of privacy than the federal constitutional right of privacy as interpreted by the federal courts.") (*quoting Am. Acad. of Pediatrics v. Lungren*, 16 Cal.4th 307, 326 (1997)).

Indeed, as numerous courts have recognized, the proposition that registering to vote would authorize the unfettered dissemination of social security numbers and other sensitive information would have a *profoundly* chilling effect on the very right the NVRA is designed to protect – the right to vote – and would undermine foundational privacy interests. *See, e.g., Kemp*, 208 F.Supp.3d at 1345 ("Disclosure of sensitive information such as Social Security numbers also is contrary to the purpose of the NVRA to 'increase the number of eligible citizens who register to vote,' 52 U.S.C. § 20501(b), because an individual could be deterred from registering if his confidential

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-16-

1   information were subject to public disclosure."); *True the Vote*, 43 F.Supp.3d at 739

2   ("Existing voter registrants and potential registrants who knew that their birthdates,

3   along with their names, addresses, and potentially other identifying information, could

4   be disclosed to any requester without restriction on further dissemination of the personal

5   information would understandably be hesitant to make such information available for

6   public disclosure."); *Greidinger v. Davis*, 988 F.2d 1344, 1354 (4th Cir. 1993) ("In

7   other words, Greidinger's fundamental right to vote is substantially burdened to the

8   extent the statutes at issue permit the public disclosure of his SSN."); *Project*

9   *Vote/Voting For Am., Inc. v. Long*, 752 F.Supp.2d 697, 711–12 (E.D. Va. 2010) ("[I]t

10  would likely undermine the purposes of the statute for the NVRA to require that voters

11  disclose their SSNs to the public. As the Fourth Circuit recognized, SSNs are uniquely

12  sensitive and vulnerable to abuse, such that a potential voter would understandably be

13  hesitant to make such information available for public disclosure.").[2]

14  _____

15  [2] *cf., e.g., In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999) ("[T]he indiscriminate
    public disclosure of SSNs, especially when accompanied by names and addresses, may
16  implicate the constitutional right to informational privacy. . . . In an era of rampant
    identity theft, concern regarding the dissemination of SSNs is no longer reserved for
17  libertarians inveighing against the specter of national identity cards."); *Sherman v. U.S.
    Dep't of Army*, 244 F.3d 357, 365 (5th Cir. 2001) ("As both our sister circuits and
18  Congress have suggested, an individual's informational privacy interest in his or her
    SSN is substantial. The privacy concern at issue is not, of course, that an individual will
19  be embarrassed or compromised by the particular SSN that she has been assigned.
    Rather, the concern is that the simultaneous disclosure of an individual's name and
20  confidential SSN exposes that individual to a heightened risk of identity theft and other
    forms of fraud."); *Reeves v. Hogle*, 2006 WL 572708, at *5 (W.D. Mich. Mar. 8, 2006)
21  ("An individual has a substantial informational privacy interest in his or her social
    security number (sometimes referred to as "SSN") . . . . A social security number is
22  synonymous with an individual's identity. It is no surprise that Congress has made the
    false use of a social security number a felony. . . . In enacting the Privacy Act of 1974,
23  the federal government recognized a privacy right in social security numbers."); *Purdy
    v. Burlington N. & Santa Fe Ry. Co.*, 2000 WL 34251818, at *4 (D. Minn. Mar. 28,
24  2000) (collecting cases) ("[N]umerous courts have found that an individual's social
    security number is a highly private piece of information."); *Gonzales v. Goodyear Tire
25  & Rubber Co.,* 2006 WL 8444095, at *4 (D.N.M. July 28, 2006) ("Other courts have
    also recognized that individuals have a strong privacy interest in their Social Security
26  numbers and driver's license information."); *Zink v. Commonwealth*, 902 S.W.2d 825,

27

28

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

**4.    Defendant Is Entitled to Judgment Because He Complied with the NVRA and Produced All Available Records and Only Redacted Uniquely Sensitive Information Protected by State Law**

Here, Plaintiff does not allege that Defendant failed to produce records responsive to its request. Indeed, it is undisputed that Defendant produced records responsive to Plaintiff's requests, which consist of records pertaining to individuals whose registration was cancelled because the registrant did not satisfy the citizenship requirements for voter registration. Dkt. 1 ¶ 20; Dkt. 9 ¶ 20, Ex. B. Rather, Plaintiff's NVRA claim arises out of Defendant's redaction of "California driver's license and identification card numbers, social security numbers, California Secretary of State-assigned voter identification numbers, language preference, and images of registrants' signatures," from the records that Defendant produced pursuant to State law prohibitions against the disclosure of such sensitive personal information. Dkt. 1 ¶¶ 20, 43 and 44.

Defendant only redacted sensitive personal information from the records it produced, which Defendant was legally obligated to protect from disclosure. Section 2194 of the California Election Code provides that "the California driver's license number, the California identification card number, the social security number, and any other unique identifier used by the State of California for purposes of voter identification shown on the affidavit of voter registration of a registered voter, or added to voter registration records to comply with the requirements of [HAVA] are confidential and shall not be disclosed to any person." Cal. Elec. Code § 2194(b); *see*

---

829 (Ky. Ct. App. 1994) ("Those nine digits [of a social security number] today represent no less than the keys to an information kingdom as it relates to any given individual. Access to a wealth of data compiled by both government agencies and private enterprises such as credit bureaus is obtainable simply upon presentation of the proper social security number."); *Thomas v. Smith*, 882 So. 2d 1037, 1045 (Fla. Dist. Ct. App. 2004) (collecting cases) ("Moreover, various other courts have found that individuals possess a legitimate expectation in the privacy of their social security numbers.")

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

*also* Cal. Gov. Code § 7924.000(a) (the "California driver's license number, the California identification card number, the social security number, and any other unique identifier used by the State of California for purposes of voter identification shown on an affidavit of registration, or added to the voter registration records to comply with the requirements of the federal Help America Vote Act of 2002 (52 U.S.C. § 20901 et seq.), are confidential and shall not be disclosed to any person"). Likewise, California law provides that, "[t]he signature of the voter that is shown on an affidavit of registration is confidential and shall not be disclosed to any person." Cal. Gov. Code § 7924.000(b); *see also* Cal. Elec. Code § 2194(b)(2) (same). Finally, the California Government Code provides that "the identity of a person who has requested a bilingual ballot or ballot pamphlet, in accordance with any federal or state law, or other data that would reveal the identity of the requester, is not a public record and shall not be provided to any person other than a public officer or public employee who is responsible for receiving the request and processing it." Cal. Gov. Code § 7924.005(a); *see also Lockyer v. City & Cnty. of San Francisco*, 33 Cal.4th 1055 (2004) (Local official does not possess the authority to disregard the terms of the statute in the absence of a judicial determination that it is unconstitutional, based solely upon the official's opinion that the governing statute is unconstitutional).

The statutes above reflect reasoned legislative determinations that this information is uniquely sensitive and could cause harm if disseminated. These legislative determinations are entitled to deference, and are consistent with case law and common sense.

As courts and legislatures around the country have determined, social security numbers are quintessentially sensitive. *See* § IV.A.3, *supra*. Driver's license numbers, too, are uniquely sensitive information, particularly because such information can be misused for identify theft or other abusive purposes. Federal law, state law, and even rules of Court protect the disclosure and dissemination of driver's license numbers. *See, e.g.,* Cal. R. Ct. 10.430 (Courts must enact generative AI use policies that ["p]rohibit the

-19-

entry of confidential, personal identifying, or other nonpublic information into a public generative AI system. Personal identifying information includes *driver's license numbers*; dates of birth; Social Security numbers; [etc.]") (emphasis added); Cal. Gov. Code § 7924.000(b) (California driver's license numbers, are confidential and shall not be disclosed to any person.); 18 U.S.C. § 2725, *et seq*. (Driver's Protection Privacy Act) (protects "personal information," including "driver identification number"); Cal. Civ. Code § 1798.82 (requiring businesses to disclose data breaches of "personal information," including "Driver's license number, California identification card number"); *People v. Zgurski*, 73 Cal.App.5th 250, 259 (2021) (affirming criminal conviction for, among other things, using stolen driver's license number to open fraudulent bank account).

Courts have also recognized that the *combination* of disclosed information can render otherwise innocuous information uniquely sensitive, particularly when that information can be used for identity theft. *See True the Vote*, 43 F.Supp.3d at 736 ("Birthdates, when combined with other identifying information available in voter registration records, can be used to obtain—both legally and improperly—a host of other highly personal information about an individual, particularly in this day of computers with vast searching powers. . . . One of the reasons that governments seek to protect birthdates and SSNs from disclosure, and warn the public against voluntary disclosure of that information, is to mitigate the risk of identity theft.") Here, the information Plaintiff seeks – voters' signatures, social security numbers, driver's licenses and more, *particularly* in combination with an individuals' full name and current address, is a consolidation of all the data necessary to fraudulently open a bank account, take out a line of credit, or engage in similar abusive or criminal conduct.

While language preference information may seem less uniquely sensitive than a social security number, disclosure that a voter prefers a language other than English runs an undeniable risk of dissuading some eligible voters from registering to vote. Whether a voter is more comfortable reading and voting in English, Spanish,

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

Vietnamese, Mandarin Chinese, Hindi, or otherwise, has *no* legitimate relevance to the NVRA's Public Disclosure Provisions and the NVRA's purpose of "expand[ing] opportunities for voter registration." *Welker*, 239 F.3d at 598–99. Nonetheless, eligible voters would "understandably be hesitant to make such information available for public disclosure" in combination with their current home address, birthdate, and full name, for fear of harassment. *See True the Vote*, 43 F.Supp.3d at 739. The risk of disclosing this sensitive personal information under the NVRA is amplified by the fact that "there is no restriction in the NVRA as to who may request records under that law and no limit on the requesters' use or further dissemination of the information once disclosed." *Id.* at 735.

California law strictly prohibits such disclosures to safeguard voter privacy and encourage voter registration. Indeed, imposing the surrender of control over personal information – disclosure of which risks identity theft or harassment of voters and their families – as a precondition to voting would create barriers analogous to the poll taxes and literacy tests that historically disenfranchised voters.

Accordingly, Defendant appropriately redacted sensitive personal information from its disclosure to Plaintiff and the Court should grant judgment in favor of the Defendant on Plaintiff's first claim for relief under the NVRA.

**B.    Defendant Is Entitled to Judgment on the Pleadings on Plaintiff's HAVA Claim, Because HAVA Does Not Authorize Direct Federal Access to Voter Data**

"Congress enacted HAVA in response to the 2000 Presidential election and the ensuing controversial Florida recount." *Gonzalez v. Arizona*, 677 F.3d 383, 402 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.,* 570 U.S. 1, 133 S. Ct. 2247 (2013). "For the most part, the NVRA and HAVA operate in separate spheres: the NVRA regulates voter registration, whereas HAVA is concerned with updating election technologies and other election-day issues at polling places." *Id.* at 402. The HAVA provision cited by Plaintiff, 52 U.S.C. § 21083, requires each state's

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

chief election official to ensure implementation, "in a uniform and nondiscriminatory manner," of "a single, uniform, official, centralized, interactive computerized statewide voter registration list" containing the name, registration information, and an assigned unique identifier of every legally registered voter in the state. 52 U.S.C. § 21083(a)(1)(A).

HAVA provides that "[t]he specific choices on the methods of complying with the requirements of [52 U.S.C. § 21083] shall be left to the discretion of the State." 52 U.S.C. § 21085. The State of California Secretary of State has implemented 52 U.S.C. § 21083 through the promulgation of extensive regulations, which "establish standards and procedures for processing, transmitting, and maintaining voter registration records in a manner that conforms with the statewide voter registration system requirements set forth in the Help America Vote Act of 2002 (HAVA) (52 U.S.C. Sections 20901, *et seq*.), the National Voter Registration Act of 1993 (NVRA) (52 U.S.C. Sections 20500, *et seq*.), and state law." Cal. Code Regs. tit. 2, § 19060(a).

Here, citing 52 U.S.C. § 21083, Plaintiff alleges that pursuant to this section, "the Attorney General is entitled to receive from the Defendants unredacted copies of the information requested in Exhibit 1 to validate Defendant's HAVA compliance," and that Defendant's failure to produce unredacted copies of the records constitutes a violation of this section. Dkt. 1 ¶¶ 38, 39. However, unlike the NVRA, which has express Public Disclosure Provisions, 52 U.S.C. § 21083 is completely silent with respect to the production of voter data. *See Silvers v. Sony Pictures Ent., Inc*., 402 F.3d 881, 885 (9th Cir. 2005) (The doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions). Indeed, the entire subchapter in which 52 U.S.C. § 21083 is contained says nothing about authorizing either Plaintiff or the public at large to access or inspect voter data, let alone sensitive personal data like the information that Defendant redacted. *See* 52 U.S.C. § 21081, *et seq.*

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

1    To the contrary, 52 U.S.C. § 21083 expressly requires Defendant to implement
2    "adequate technological security measures to prevent the unauthorized access to the
3    computerized list established under this section," which would appear to restrict
4    Defendant's ability to produce records relating to voters without a subpoena or search
5    warrant. 52 U.S.C. § 21083(a)(3). Thus, rather the supporting Plaintiff's theory that
6    Defendant violated HAVA by redacting "driver's license and identification card
7    numbers, social security numbers, California Secretary of State-assigned voter
8    identification numbers, language preference, and images of registrants' signatures,"
9    from the records it produced, the plain language of the statute demonstrates that
10   Defendant's actions in limiting access to the sensitive information of registrants are
11   consistent, if not required, by HAVA.

12   Without explanation, Plaintiff's Complaint cites to 52 U.S.C. § 21111, which
13   authorizes the Attorney General to bring a civil action for such declaratory and
14   injunctive relief as may be necessary to carry out the uniform and nondiscriminatory
15   election technology and administration requirements under HAVA. This suggests that
16   Plaintiff may argue in circular fashion that the USDOJ's authority under this section
17   authorizes it to demand the production of sensitive personal information of registrants
18   without a subpoena or warrant to seek out potential violations of HAVA and that the
19   failure to comply with such extrajudicial requests, therefore constitutes a violation of
20   HAVA. Dkt. 1 ¶¶ 3, 32, 39. While Congress may expressly authorize federal agencies to
21   issue administrative subpoenas without court authorization for any purpose within
22   Congress's constitutional power, HAVA does not contain any provision that authorizes
23   the USDOJ to make such requests, let alone to invoke the aid of a federal court to
24   enforce such demands for the sensitive personal information of registrants. *See In re*
25   *Nat'l Sec. Letter*, 863 F.3d 1110, 1114 (9th Cir. 2017) (Congress may authorize federal
26   agencies to issue administrative subpoenas without court authorization for any purpose
27   within Congress's constitutional power, but agency must then invoke the aid of a federal
28   court to enforce it).

OFFICES OF THE COUNTY COUNSEL
COUNTY OF ORANGE

-23-

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Indeed, the USDOJ's apparent contention that it has broad implied authority under HAVA to demand the sensitive personal information of registrants without a warrant, subpoena, or any court oversight raises significant constitutional concerns. *See Hell's Angels Motorcycle Corp. v. Cnty. of Monterey*, 89 F.Supp.2d 1144, 1149 (N.D. Cal. 2000), *aff'd sub nom. Hell's Angels Motorcycle Corp. v. McKinley*, 354 F.3d 1000 (9th Cir. 2004), *withdrawn from bound volume, opinion amended and superseded on denial of reh'g*, 360 F.3d 930 (9th Cir. 2004) (even where Attorney General had broad and express authority to subpoena records in drug investigations, the target of an administrative subpoena is entitled under the Fourth Amendment to a judicial determination that (1) the subpoena is issued for a congressionally authorized purpose, the information sought is (2) relevant to the authorized purpose and (3) adequately described, and (4) proper procedures have been employed in issuing the subpoena).

Accordingly, the Court should grant Defendant judgment on the pleadings on Plaintiff's first claim for relief under HAVA given that unlike the NVRA, HAVA does not contain any Public Disclosure Provisions that would authorize the USDOJ to demand the sensitive personal information of registrants. Likewise, the USDOJ cannot file an action to enforce HAVA that is predicated on Defendant's failure to comply with such an unauthorized request.

## C.    The Court Should Consider the State's Position in the Related *U.S.A. v. Weber* Matter

Shortly after filing this action, Plaintiff filed a related and similar case against the State of California and the California Secretary of State, *United States of America v. Shirley Weber et al.*, Case Number 2:25-cv-09149, arguing, as it does here, that HAVA and the NVRA preempt state law by requiring the public disclosure of uniquely sensitive information without a warrant or subpoena. As it is important that the Court consider the State's position, Defendant refers the Court to the State's November 10, 2025 Motion to Dismiss, a copy of which is attached herewith. Richards Decl. at ¶ 3, Ex. 1.

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

OFFICES OF THE COUNTY COUNSEL COUNTY OF ORANGE

1  **V.**    **CONCLUSION**

2          For the foregoing reasons, Defendant respectfully requests that the Court grant its

3  Motion for Judgment on the Pleadings, and grant judgement in favor of Defendant on all

4  claims.

5                                                  Respectfully submitted,

6                                                  LEON J. PAGE, COUNTY COUNSEl
                                                   SUZANNE E. SHOAI, SENIOR DEPUTY
7                                                  DANIEL L. RICHARDS, DEPUTY

8

9  DATED: November 14, 2025          By:    _____/s/ *Suzanne E. Shoai*_____
                                                   Suzanne E. Shoai, Senior Deputy
10

11                                                 Attorneys for Defendant
                                                   ROBERT PAGE, in his official capacity as
12                                                 Registrar of Voters for Orange County

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT ROBERT PAGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS