GRAYCE ZELPHIN (SBN 279112)
gzelphin@aclunc.org
ANGELICA SALCEDA (SBN 296152)
asalceda@aclunc.org
ACLU FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493

JULIA A. GOMEZ (SBN 316270)
jgomez@aclusocal.org
PETER ELIASBERG (SBN 89110)
peliasberg@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5232

Counsel for Proposed Intervenor-Defendants

*Additional counsel listed below*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT PAGE, in his official capacity as Registrar of Voters for Orange County, California,<br><br>Defendant. | CASE NO: 8:25-cv-01370-DOC-ADS<br><br>**NOTICE OF MOTION AND MOTION FOR INTERVENTION OF LEAGUE OF WOMEN VOTERS OF CALIFORNIA, LEAGUE OF WOMEN VOTERS OF ORANGE COAST, AND LEAGUE OF WOMEN VOTERS OF NORTH ORANGE COUNTY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE: December 15, 2025<br>TIME: 8:30 AM<br>COURTROOM: 10A, 10th Floor<br>JUDGE: Hon. David O. Carter |

THERESA J. LEE (NY 5022769)*
tlee@aclu.org
SOPHIA LIN LAKIN (NY 5182076)*
slakin@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

PATRICIA J. YAN (NY 5499173)*
pyan@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800

*Application for admission pro hac vice forthcoming

## NOTICE OF MOTION AND MOTION TO INTERVENE

The League of Women Voters of California ("LWVC"), the League of Women Voters of Orange Coast ("LWVOC"), and the League of Women Voters of North Orange County ("LWVNOC") (collectively, "Proposed Intervenor-Defendants") respectfully move for leave to intervene as Defendants in this case as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, for permissive intervention pursuant to Rule 24(b).

In support of their Motion, Proposed Intervenor-Defendants submit and incorporate the below Memorandum of Points and Authorities, declaration of Jenny Farrell (attached as Exhibit A), declaration of Anne Stone (attached as Exhibit B), declaration of Geraldine McNenny (attached as Exhibit C), a Proposed Answer submitted pursuant to Rule 24(c) (attached as Exhibit D), and a Proposed Order (attached as Exhibit E). Pursuant to Local Rule 7-3, counsel for Proposed Intervenor-Defendants made a good-faith effort to confer with counsel for the existing parties. (See Declaration of Grayce Zelphin, attached as Exhibit F). On November 12, 2025, counsel for Proposed Intervenor-Defendants contacted Plaintiff's counsel and Defendant's Counsel requesting availability for a call to discuss proposed intervention. On November 13, 2025, Plaintiff's counsel responded by email and stated that Plaintiff opposes the motion. Proposed Intervenor-Defendants also met and conferred with Defendant's counsel, and on November 14, 2025, they confirmed that Defendant does not oppose Proposed Intervenor-Defendants' motion.

For the reasons below, Proposed Intervenor-Defendants' motion should be granted.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO INTERVENE ................................. iii

TABLE OF CONTENTS .................................................................. iv

TABLE OF AUTHORITIES ............................................................... v

INTRODUCTION .......................................................................... 1

BACKGROUND ............................................................................ 3

I.   Federal Law Entrusts States with the Responsibility to Collect, Maintain, and Protect Voter Data .................................................................. 3

II.  The Department of Justice Demands Unwarranted Access to Unredacted Voter Data, Citing Questionable Rationale ..................................... 4

ARGUMENT ................................................................................ 9

I.   Proposed Intervenor-Defendants Are Entitled to Intervene as of Right Under Rule 24(a)(2) ................................................................. 9

    A.   Proposed Intervenor-Defendants' Motion Is Timely ......................... 10

    B.   Proposed Intervenor-Defendants Have a Significantly Protectable Interest that Will be Impaired if Plaintiff DOJ Prevails ..................... 13

    C.   Proposed Intervenor-Defendants' Interests Are Not Adequately Represented by the Existing Parties ......................................... 17

II.  In the Alternative, Proposed Intervenor-Defendants Should Be Granted Permissive Intervention Under Rule 24(b) ...................................... 19

CONCLUSION ............................................................................ 22

CERTIFICATE OF COMPLIANCE ..................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Alturas Indian Rancheria v. Salazar*,
   2011 WL 587588 (E.D. Cal. Feb. 9, 2011) ...........................................................12

*Apache Stronghold v. United States*,
   2023 WL 3692937 (D. Ariz. May 29, 2023) .........................................................12

*Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*,
   2009 WL 5206722 (E.D. Cal. Dec. 23, 2009)........................................................19

*Boot Barn, Inc. v. Bonta*,
   2023 WL 5155878 (E.D. Cal. Aug. 10, 2023) .......................................................18

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
   54 F.4th 1078 (9th Cir. 2022) ...............................................................................10

*Cal. Dump Truck Owners Ass'n v. Nichols*,
   275 F.R.D. 303 (E.D. Cal. 2011)...........................................................................17

*Cal. Ex rel. Lockyer v. United States*,
   450 F.3d 436 (9th Cir. 2006).................................................................................13

*Callahan v. Brookdale Senior Living Communities, Inc.*,
   42 F.4th 1013 (9th Cir. 2022)................................................................................20

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011)........................................................................ *passim*

*Crimson Pipeline Mgmt., Inc. v. Herzog Contracting Corp.*,
   2013 WL 12246623 (C.D. Cal. July 9, 2013) ................................................ 12, 20

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
   2010 WL 2942754 (E.D. Cal. July 23, 2010) .......................................................12

*Est. of Toguri v. Pierotti*,
   2023 WL 8703417 (C.D. Cal. Feb. 27, 2023)........................................................11

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011).................................................................................20

*GHP Mgmt. Corp. v. City of L.A.*,
   339 F.R.D. 621 (C.D. Cal. 2021) ..........................................................................19

*Greene v. United States*,
    996 F.2d 973 (9th Cir. 1993)................................................................13

*Husted v. A. Philip Randolph Inst.*,
    584 U.S. 756 (2018) ....................................................................3, 4

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995)............................................................16

*Idaho v. Freeman*,
    625 F.2d 886 (9th Cir. 1980)............................................................16

*Issa v. Newsom*,
    2020 WL 3074351 (E.D. Cal. June 10, 2020).........................11, 14, 18

*Kalbers v. U.S. Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021)....................................................10, 12, 13

*KOR Servs., LLC v. Thomson Int'l*,
    2022 WL 18278406 (C.D. Cal. Aug. 3, 2022)................................12

*Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*,
    2024 WL 3290349 (D. Or. July 2, 2024) ..................................11

*Paher v. Cegavske*,
    2020 WL 2042365 (D. Nev. Apr. 28, 2020) ........................14, 15, 19

*Republican Nat'l Comm. v. Aguilar*,
    2024 WL 3409860 (D. Nev. July 12, 2024)................................20, 21

*Sable Offshore Corp. v. County of Santa Barbara*,
    2025 WL 2412147 (C.D. Cal. July 25, 2025)................................17

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983)............................................16, 17

*Sawyer v. Bill Me Later, Inc.*,
    2011 WL 13217238 (C.D. Cal. Aug. 8, 2011)................................12

*SEC v. Navin*,
    166 F.R.D. 435 (N.D. Cal. 1995) ........................................15

*Sierra Club v. EPA*,
    995 F.2d 1478 (9th Cir. 1993)............................................10

*Smith v. L.A. Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ............................................................. 10, 12

*Spangler v. Pasadena City Bd. of Educ.*,
    552 F.2d 1326 (9th Cir. 1977) ............................................................. 20, 21

*Sullivan v. Ferguson*,
    2022 WL 10428165 (W.D. Wash. Oct. 18, 2022) ................................... 21

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ............................................................. 13

*United States v. Aerojet Gen. Corp.*,
    606 F.3d 1142 (9th Cir. 2010) ............................................................. 11

*United States v. Carpenter*,
    526 F.3d 1237 (9th Cir. 2008) ............................................................. 15

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ............................................................. 10

*United States v. McGraw-Hill Cos. Inc.*,
    2013 WL 12308202 (C.D. Cal. Nov. 7, 2013) ................................... 11

*United States v. Oregon*,
    839 F.2d 635 (9th Cir. 1988) ............................................................. 14

*United States v. Stringfellow*,
    783 F.2d 821 (9th Cir.1986) ............................................................. 14

*W. Watersheds Project v. Haaland*,
    22 F.4th 828 (9th Cir. 2022) ............................................................. 10

*Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ............................................................. 10, 11, 13

**Statutes**

U.S. Const. art. I, § 4, cl. 1 ............................................................. 3

52 U.S.C. § 20501(b) ............................................................. 3

52 U.S.C. § 20503(a) ............................................................. 3

52 U.S.C. § 20507(a) ............................................................. 3, 4

52 U.S.C. § 21083(a) .................................................................4

Cal. Elec. Code §§ 2260-2277 ....................................................8

**Rules**

Fed. R. Civ. P. 24(a)............................................................. *passim*

Fed. R. Civ. P. 24(b) ............................................................ *passim*

**Other Authorities**

7C Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1908 (3d ed. 1998 & Supp. 2025).............................................................................10

City News Service, *Justice Department Rejects Orange County Proposal to Avoid Lawsuit Over Sensitive Voter Information*, L.A. Times (Jun. 26, 2025), https://www.latimes.com/socal/daily-pilot/entertainment/story/2025-06-26/justice-department-rejects-orange .......................................5

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html ....................................................................................2

Kaylie Martinez-Ochoa, *Eileen O'Connor & Patrick Berry, Tracker of Justice Department Requests for Voter Information*, Brennan Center (Oct. 28, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-inform .......................................1

## INTRODUCTION

Proposed Intervenor-Defendants, the League of Women Voters of California ("LWVC"), the League of Women Voters of Orange Coast ("LWVOC"), and the League of Women Voters of North Orange County ("LWVNOC"), move to intervene in this action to guard against federal intrusion into state management of elections and prevent the United States Department of Justice ("DOJ") from unlawfully collecting and misusing sensitive data California voters entrusted to their election officials when registering to vote. Concerned by the DOJ's attempt to unlawfully extract sensitive and confidential voter data, and motivated by its mission to encourage civic participation and protect voters' privacy, Proposed Intervenor-Defendants respectfully move to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2).

This lawsuit arises from the DOJ's June 2025 demand for certain voter data from the Orange County Registrar of Voters, with the dispute hinging on DOJ's insistence that Orange County provide *all* data relating to certain individuals who had registered to vote—even the sensitive information protected by California law—completely unredacted. After this lawsuit was filed, the broader contours of the scope of the DOJ's planned data requests have begun to emerge more clearly: rather than an isolated investigation, the DOJ's demand for voter data from Orange County appears to be the tip of the iceberg of an unprecedented nationwide campaign to unlawfully compile full, unredacted state voter files.

Despite the federal government's constitutionally limited role in managing federal elections, which extends only so far as Congress has specifically legislated, over the past several months the DOJ has repeatedly attempted to intrude upon states' authority to manage elections. Following a slew of sweeping data requests for extensive voter information from at least 40 states,[1] the DOJ has already sued

---

[1] Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information,* Brennan Center (Oct. 28, 2025),

eight states that declined to provide their full unredacted voter files in light of state and federal laws protecting sensitive information.[2]  While the DOJ asserts that it is merely investigating "voter registration list maintenance" in these states, media reports and the national reach of its voter data requests suggest that the true motive is a broader quest to create an illegal national voter roll.[3]  Although the data the DOJ seeks from Orange County in this case is narrower in scope, a judgment in this case may well impact related DOJ lawsuits against states seeking unredacted voter data, including the lawsuit against California, *United States v. Weber*.  Here, as elsewhere, the DOJ's requests go beyond what is authorized by federal law—and complying with them would violate California law.

LWVC is a non-partisan grassroots organization with thousands of members across the state, including in Orange County.  It is one of the state's preeminent pro-democracy and pro-voter organizations, dedicated to encouraging civic participation and increasing voter registration across California.  LWVC has led many of California's efforts to expand voter registration opportunities and to pass legislation securing the confidentiality and privacy of voter information.  LWVC seeks to intervene to safeguard its interests in conducting voter engagement and education work, maintaining the privacy of voters, and defending the pro-voter policies it has helped to pass.  The two local chapters of LWVC in

https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[2] *U.S. v. Maine*, No. 1:25-cv-468 (D. Me. filed Sept. 25, 2025); *U.S. v. Benson*, No. 1:25- cv-01148 (W.D. Mich. filed Sept. 25, 2025); *U.S. v. Simon*, No. 0:25-cv-03761 (D. Minn. filed Sept. 25, 2025); *U.S. v. Bd. of Elections of the State of New York*, No. 1:25-cv-01338 (N.D.N.Y. filed Sept. 25, 2025); *U.S. v. Scanlan*, No. 1:25-cv-00371 (D.N.H. filed Sept. 25, 2025); *U.S. v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. filed Sept. 25, 2025).

[3] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

Orange County, LWVOC and LWVNOC, share the mission of LWVC to encourage civic participation and voter registration at the local level and also seek to intervene to safeguard their interests.

Proposed Intervenor-Defendants' participation will not cause any delay and will provide the Court with important context that will aid in the swift and just resolution of this case. No other party can fully represent Proposed Intervenor-Defendants' unique interests here. Proposed Intervenor-Defendants' motion for mandatory intervention under Rule 24(a)—or in the alternative, for permissive intervention under Rule 24(b)—should accordingly be granted.[4]

## BACKGROUND

## I.    Federal Law Entrusts States with the Responsibility to Collect, Maintain, and Protect Voter Data

Under the Elections Clause of the U.S. Constitution, it is the responsibility of states to regulate the "Times, Places, and Manner" of federal elections, and only Congress can enact laws to "make or alter" those regulations. *See* U.S. Const. art. I, § 4, cl. 1. The Framers intentionally delegated the power to register voters and collect and maintain voter data to the states to avoid concentrated power in a single federal body.

Even where Congress has exercised its authority to alter states' regulation of federal elections, it has made clear that it is the state's responsibility to maintain voter data. In 1993, Congress enacted the National Voter Registration Act ("NVRA") and directed states to establish voter registration procedures to increase registration and maintain accurate voter rolls. *See* 52 U.S.C. §§ 20501(b), 20503(a). The NVRA's text clearly delegates "the administration of voter registration for elections for Federal office" to "each state." *See id.* § 20507(a); *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). It required *states* to

---

[4] Proposed Intervenor-Defendants' motion is accompanied by a proposed Answer, pursuant to Rule 24(c).

maintain accurate voter rolls by conducting a "general program that makes a reasonable effort" to remove voters who are deceased or have changed their address. 52 U.S.C. § 20507(a)(4). While the NVRA created guidelines for states to follow and required states to have a program for list maintenance, the duty to safeguard voter data remained with the states, not the federal government. *See Husted*, 584 U.S. at 761-62.

In enacting the Help America Vote Act ("HAVA") in 2002, Congress again made it clear that states are responsible for maintaining voter rolls. HAVA directs "each State" to implement a uniform computerized voter registration list "defined, maintained, and administered at the State level." 52 U.S.C. § 21083(a)(1)(A). Like the NVRA, HAVA created specific requirements for *states* to follow in maintaining accurate voter information and does not give this power to the federal government. *See id.* HAVA has no requirement that voter information be publicly disclosed.

## II. The Department of Justice Demands Unwarranted Access to Unredacted Voter Data, Citing Questionable Rationale

On June 2, 2025, the DOJ sent a letter to Orange County demanding, within 14 days:

1. Records showing the number of voter registration records in Orange County cancelled because the registrant did not satisfy the citizenship requirements for voter registration.
2. Records related to each cancellation described in Request No. 1, including copies of each registrant's voter registration application, voter registration record, voting history, and related correspondence sent or received by your office in regard to the registration.

ECF No. 9-1 at 2; *see also* Compl. ¶ 19.

On June 16, 2025, Orange County responded by providing the requested data, but redacting certain sensitive information pursuant to California law and consistent with governing federal law: California driver's license and identification card numbers, social security numbers ("SSN"), state-assigned voter identification

numbers, language preferences, and images of registrants' signatures.  Compl. ¶ 20; ECF No. 9-2 at 2.  On June 17, 2025, the DOJ claimed that the data provided by Orange County did not allow the DOJ to "make an accurate assessment of [Orange County's] compliance with HAVA," and that "the California statutes on which [Orange County] relied to redact the information is pre-empted when it conflicts with [DOJ's] enforcement authority under HAVA."  ECF No. 9-3 at 1.  The DOJ demanded the unredacted data by June 20, 2025, and threatened to otherwise initiate litigation by June 24, 2025.  *Id.*  On June 20, 2025, counsel for Orange County responded, again explaining the legal basis for the redactions, and noting that Orange County was "unaware of any HAVA provision requiring the disclosure of registration records upon request without a subpoena, let alone confidential personal information," but that Orange County "would certainly be open to further consideration of the matter" if the DOJ could "provide legal authority that requires the Registrar of Voters to produce the sensitive information redacted here without a subpoena and without any protection from public disclosure."  ECF No. 9-4 at 2. In a subsequent phone call on June 23, 2025, the counsel for Orange County confirmed it would not be providing the requested unredacted records.  Compl. ¶ 29.

Notwithstanding these statements, in a separate email communication on June 24, 2025, counsel for Orange County expressed potential willingness to share the unredacted data:

> To avoid a lawsuit, would the USDOJ consider another mechanism to enable the County to provide the USDOJ with this sensitive information? For example, would the USDOJ be amenable to entering into a confidentiality agreement that would enable us to provide records with assurances that such sensitive personal identifiers will remain confidential and be used for governmental purposes only?[5]

---

[5] City News Service, *Justice Department Rejects Orange County Proposal to Avoid Lawsuit Over Sensitive Voter Information*, L.A. Times (Jun. 26, 2025),

Despite this offer, the DOJ sued Orange County the next day, citing the NVRA and HAVA as its basis for demanding unredacted sensitive personal information from Orange County.

### III.   LWVC, LWVOC, and LWVNOC Have a Vested Interest in Protecting California Voters, Including Their Members, and Preserving Legislative Advocacy

LWVC is the California affiliate of the League of Women Voters ("LWV"), which was founded in 1920 as an outgrowth of the struggle for voting rights for women.  Declaration of Jenny Farrell ("Farrell Decl.") ¶ 4.  LWV has more than one million members and supporters and is organized in more than 750 communities in all 50 states and the District of Columbia.  *Id.*  In California, LWVC serves as a large non-partisan grassroots membership organization that has approximately 7,000 dues-paying members in the state across 62 local chapters.  *Id.* ¶¶ 5-6.  Its mission is to engage all Californians in acting on the issues that matter to them, to build political power and voice in communities historically underrepresented in the halls of government, to enact solutions to some of the biggest challenges facing the state, and to drive every eligible voter to register and to cast their ballot.  *Id.* ¶ 8.

LWVOC and LWVNOC are the two local chapters of LWVC in Orange County.  Declaration of Anne Stone ("Stone Decl.") ¶ 5; Declaration of Geraldine McNenny ("McNenny Decl.") ¶ 6.  In Orange County, LWVOC has approximately 200 members, Stone Decl. ¶ 7, and LWVNOC has approximately 116 members, McNenny Decl. ¶ 8.  As local chapters, LWVOC and LWVNOC are non-partisan grassroots membership organizations that share the mission of LWVC and LWV,

---

https://www.latimes.com/socal/daily-pilot/entertainment/story/2025-06-26/justice-department-rejects-orange-county-proposal-to-avoid-lawsuit-over-sensitive-voter-information.

and all members of LWVOC and LWVNOC are also members of LWVC and
LWV.  Stone Decl. ¶¶ 6-7, 9; McNenny Decl. ¶¶ 7-8, 10.

LWVC members and volunteers work year-round in their local communities
as part of an integrated voter engagement model of organizing.  Farrell Decl. ¶¶ 6,
10-11.  Through and in coordination with local chapters, including LWVOC and
LWVNOC, LWVC regularly conducts voter service projects, including efforts to
register voters, get out the vote, and educate the public on elections.  *Id.* ¶ 12.  For
example, during 2024, nearly 3,000 LWVC volunteers donated almost 35,000
hours of their time providing voter information to Californians.  *Id.*  These
volunteer hours were applied at over 2,000 individual activities, including voter
registration drives at high schools, colleges, and local community events; hosting
"pros and cons" speaking events to educate the public regarding upcoming ballot
measures; hosting candidate forums; and conducting get out the vote events, often
in partnership with other community organizations, to educate, engage, and turn
out voters in the period leading up to an election.  *Id.*  Similarly, LWVOC and
LWVNOC volunteers donated thousands of hours through such voter service
projects in Orange County.  *See* Stone Decl. ¶ 12; McNenny Decl. ¶ 12.

The vast majority of members and volunteers of LWVC, LWVOC, and
LWVNOC, as well as members of the communities they serve, are registered to
vote or intend to register in California, including in Orange County.  Farrell Decl.
¶ 7; Stone Decl. ¶ 8; McNenny Decl. ¶ 9.  In Orange County, LWVC, LWVOC,
and LWVNOC members have already provided or plan to provide Defendant Page
with sensitive information in order to register—including date of birth, driver's
license number, state identification card number, or the last four digits of their
social security number—and they reasonably expect the State to keep this
information private.  Stone Decl. ¶ 8; McNenny Decl. ¶ 9; *see also* Farrell Decl.
¶ 7.  If this sensitive information can be provided unredacted in response to DOJ's

1    demands in this action, the same sensitive information of members and volunteers

2    of LWVOC, LWVNOC, and LWVC could equally be subject to disclosure.

3          LWVC also dedicates significant resources to support or oppose legislation

4    on issues which its statewide membership has reached consensus.  Farrell Decl.

5    ¶ 19.  In this capacity, LWVC has supported AB 1461 (Gonzalez 2015), *id.*,

6    California's Motor Voter law which automatically registers eligible residents to

7    vote when they complete a Department of Motor Vehicle ("DMV") transaction

8    unless they opt out, *see generally* Cal. Elec. Code §§ 2260-2277.  The law also

9    includes enhanced privacy safeguards such as limits on data sharing, confidential

10   voter categories, liability protections that shield mistakenly registered voters from

11   fraud charges unless they knowingly vote while ineligible, and criminal penalties

12   for unauthorized disclosure or misuse of DMV voter registration information.  *See*

13   *id.* §§ 2265(b)(4)(c), (f) (data use and sharing limits); *id*. § 2266 (confidentiality

14   procedures and penalties for unauthorized disclosure); *id*. § 2269 (confidential

15   voter categories); *id*. § 2271 (protections for inadvertent registration); *see also*

16   Farrell Decl. ¶ 19.  LWVC currently sits on the California Motor Voter Task Force,

17   created by AB 796 (Berman 2021), and has sponsored bills extending the Task

18   Force.  Farrell Decl. ¶ 19.  LWVC also supported AB 1037 (Berman 2023), which

19   modernized California's vote-by-mail cure process by allowing voters with missing

20   or mismatched signatures to submit their verification statements electronically,

21   while also requiring elections officials to adopt strict privacy and security protocols

22   to ensure that transmitted information would be used only for signature verification

23   of their ballots.  *Id.*

24         LWVC has also supported other bills that would have included privacy

25   protections, including AB 1337 (Ward 2025), which would have extended privacy

26   protections from state to local governments to ensure consistent safeguards for all

27   Californians' data, and expanded the definition of personal information to include

28   sensitive categories such as immigration status.  *Id.* ¶ 20.  In addition, LWVC

supported AB 2677 (Gabriel 2022), which would have expanded the definition of personal information, prohibited state agencies from using personal information for purposes beyond those for which it was collected, and required clearer notice about all intended uses of data. *Id.* LWVC has also opposed legislation, like AB 25 (DeMaio 2025), which would have required voters to provide additional identification information to cast a ballot, creating both new risks of data exposure and barriers to participation, and SB 511 (Bates 2021), which would have created privacy risks by requiring jury commissioners to share personal information from juror questionnaires with elections officials for voter roll maintenance, including sensitive details like language skills that are irrelevant to voter eligibility. *Id.*

If the DOJ succeeds in securing its requested relief, this will harm members of LWVC, LWVOC, and LWVNOC by undermining protections of their sensitive personal information, stripping away the voter privacy rights they have fought to bolster under California law, and eroding the pro-voter mission they champion as League members. Farrell Decl. ¶ 23; Stone Decl. ¶ 17; McNenny Decl. ¶ 17. Additionally, the voter outreach and registration efforts of LWVC, LWVOC, and LWVNOC would be harmed, as Californians concerned by the prospect of their sensitive information being shared with the federal government may become less engaged and reluctant to register to vote or participate in the political process. Farrell Decl. ¶ 24; Stone Decl. ¶ 18; McNenny Decl. ¶ 18.

## ARGUMENT

### I.    Proposed Intervenor-Defendants Are Entitled to Intervene as of Right Under Rule 24(a)(2).

Under Rule 24(a) of the Federal Rules of Civil Procedure, a "timely" motion to intervene must be granted where the movant alleges (1) a "significantly protectable interest" relating to the subject matter of the lawsuit, (2) that "disposition of the action" will "as a practical matter impair or impede its ability to protect that interest[,]" and (3) that the interest will be "inadequately represented

by the parties to the action." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)).  Rule 24(a) must be construed "broadly in favor of proposed intervenors." *Id.* at 1179 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)).  Further, in the Ninth Circuit, intervenors "that seek the same relief sought by at least one existing party to the case need not" independently demonstrate Article III standing.  *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022); *see also* 7C Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1908 (3d ed. 1998 & Supp. 2025).  Thus, a party "must" be permitted to intervene when it satisfies the requirements of Rule 24(a).  Fed. R. Civ. P. 24(a).  Here, Proposed Intervenor-Defendants satisfy each of the elements for intervention as of right.

### A.  Proposed Intervenor-Defendants' Motion Is Timely.

Proposed Intervenor-Defendants' motion is timely.  There are three "primary factors" that courts consider in evaluating timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (quoting *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)); *see also W. Watersheds Project v. Haaland*, 22 F.4th 828, 835-36 (9th Cir. 2022).  The Ninth Circuit interprets these factors "broadly in favor of intervention." *W. Watersheds Project*, 22 F.4th at 835.

Here, Proposed Intervenor-Defendants have moved for intervention at an early stage in the proceedings, about four and a half months from when the case was filed on June 25, 2025, before any major deadlines have passed and before any substantive rulings have been made.  Courts regularly find such motions timely.  In a September 15, 2025 Scheduling Order, the Court set a fact discovery cut-off deadline of December 1, 2025 and a motion cut-off deadline of January 26, 2026, with the final pretrial conference on March 9, 2026 and trial on March 31, 2026.

ECF No. 19 at 1.  Additionally, on October 1, 2025, Plaintiff filed a Motion to Stay based on the lapse in federal appropriations, which is currently pending.  ECF No. 21.  In that motion, Plaintiff requested that "all current deadlines" listed above be "extended by the total number of days of the lapse in appropriations, *id.* at 3, and Defendant did not oppose,[6] except to seek clarification that the response dates for outstanding discovery would also be tolled, ECF No. 22 at 1-2.  As of October 24, 2025, Plaintiff and Defendant appear to have agreed on a November 26, 2025 deadline for outstanding written discovery, and December 5, 2025 for an outstanding deposition date.  ECF No. 30 at 1-2.  And the only hearings in this case thus far have focused on non-substantive matters—primarily regarding scheduling and the Motion to Stay.  *See* ECF No. 25; ECF No. 31.

Courts routinely find motions to intervene timely under such circumstances where the litigation is still at an early stage of the proceedings.  *See, e.g.*, *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (motion to intervene was timely where it was filed within four months of when applicants learned of proposed consent decree); *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (finding motion timely where movants intervened around three months after the complaint was filed); *Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*, 2024 WL 3290349, at *2 (D. Or. July 2, 2024) (delay of five months constituted "minimal delay"); *Issa v. Newsom*, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020) (finding motion timely where "no substantive proceedings ha[d] occurred"); *Est. of Toguri v. Pierotti*, 2023 WL 8703417, at *6 (C.D. Cal. Feb. 27, 2023) (finding delay of nearly a year was still timely because there had been no "rulings on the merits and the case is in its procedural infancy"); *United States v. McGraw-Hill Cos. Inc.*, 2013 WL 12308202, at *2 (C.D. Cal. Nov. 7, 2013) (finding intervention timely eight months after lawsuit was filed, while "the action is in a relatively early stage of the proceeding");

---

[6] Proposed Intervenor-Defendants also do not oppose the Motion to Stay.

1   *Sawyer v. Bill Me Later, Inc.*, 2011 WL 13217238, at *4 (C.D. Cal. Aug. 8, 2011)

2   (granting motion to intervene filed about a year after lawsuit commenced, and

3   noting that "[s]ister district courts in the Ninth Circuit have regularly found motions

4   to intervene timely" at later stages) (citing *Delano Farms Co. v. Cal. Table Grape*

5   *Comm'n*, 2010 WL 2942754, at *1 (E.D. Cal. July 23, 2010) (motion timely even

6   after about three years because no substantive rulings had been made); *Alturas*

7   *Indian Rancheria v. Salazar*, 2011 WL 587588, at *3 (E.D. Cal. Feb. 9, 2011)

8   (motion timely after nearly six months, even where several substantive motions had

9   been filed)).

10      Intervention at this early stage will not prejudice any of the existing parties.

11  "The only prejudice that is relevant is that which flows from a prospective

12  intervenor's failure to intervene after he knew, or reasonably should have known,

13  that his interests were not being adequately represented." *Kalbers*, 22 F.4th at 825

14  (quoting *Smith*, 830 F.3d at 857) (cleaned up).  Here, given the early stage of this

15  litigation, before any substantive rulings and before the close of discovery and other

16  substantive deadlines, the parties will not be prejudiced by intervention.  *See, e.g.*,

17  *Citizens for Balanced Use*, 647 F.3d at 897 (granting motion to intervene because

18  it was made "at an early stage of the proceedings, the parties would not have

19  suffered prejudice from the grant of intervention at that early stage, and

20  intervention would not cause disruption or delay in the proceedings"); *KOR Servs.,*

21  *LLC v. Thomson Int'l*, 2022 WL 18278406, at *4 (C.D. Cal. Aug. 3, 2022) (granting

22  motion to intervene because parties would not be prejudiced when the proceedings

23  were "still in the early stages," discovery was not closed, the parties had not taken

24  depositions, and no dispositive motions had been filed); *Apache Stronghold v.*

25  *United States*, 2023 WL 3692937, at *2 (D. Ariz. May 29, 2023) (finding that

26  existing parties would not be prejudiced where the case was "still in the very early

27  stages"); *Crimson Pipeline Mgmt., Inc. v. Herzog Contracting Corp.*, 2013 WL

28  12246623, at *2 (C.D. Cal. July 9, 2013) (finding no prejudice where intervention

would not require the extension of any deadlines). Here, Proposed Intervenor-Defendants will comply with the schedule adopted by the Court, and none of these substantive deadlines have passed.

When the instant lawsuit was filed, the relatively narrow scope of the data sought by DOJ here belied the broader context and significant voter privacy concerns that would later emerge through DOJ's filing of a slew of records requests and lawsuits against at least eight states (so far) seeking entire unredacted statewide voter files. *See* Farrell Decl. ¶¶ 22-23; Stone Decl. ¶ 17; McNenny Decl. ¶ 17. Around mid to late October, when LWVC moved to intervene in the related statewide case against California, *United States v. Weber*, LWVC, along with the local Orange County chapters of LWVOC and LWVNOC, assessed and determined that their interests would be implicated in the instant lawsuit as well, and expeditiously sought to intervene shortly thereafter. *See id.*

Proposed Intervenor-Defendants thus meet Rule 24(a)'s timeliness requirement.

**B.     Proposed Intervenor-Defendants Have a Significantly Protectable Interest that Will be Impaired if Plaintiff DOJ Prevails.**

To demonstrate a "significantly protectable interest" relating to the subject matter of the action, the intervenor must (1) assert "an interest that is protected under some law," and (2) show that "there is a relationship between its legally protected interest and the plaintiff's claims." *Kalbers*, 22 F.4th at 827. This is a "practical, threshold inquiry"; no "specific legal or equitable interest need be established." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)). Similarly, to satisfy the impairment requirement, an intervenor need only show that "it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *Cal. Ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

Proposed Intervenor-Defendants have a significantly protectable interest in ensuring their members' personal voter registration data is safeguarded and is not at risk of similar disclosure as a result of the outcome of this action. *See* Farrell Decl. ¶¶ 22-23; Stone Decl. ¶ 17; McNenny Decl. ¶ 17. Most members of LWVC are registered to vote in California, and most members of LWVOC and LWVNOC are registered to vote in Orange County, and these members have already submitted sensitive information to their counties and the State for voter registration purposes. Farrell Decl. ¶ 7; Stone Decl. ¶ 8; McNenny Decl. ¶ 9. These members have legitimate concerns about a decision in this case that allows for sensitive voter information to be disclosed. *See id.*; *see also* Farrell Decl. ¶¶ 22-23; Stone Decl. ¶ 17; McNenny Decl. ¶ 17. A possible *stare decisis* effect is an "important consideration in determining the extent to which [a proposed intervenor's] interest may be impaired." *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (citing *United States v. Stringfellow,* 783 F.2d 821, 826 (9th Cir.1986)).

Furthermore, Proposed Intervenor-Defendants have a significantly protectible interest in pursuing their shared core mission of increasing civic participation and encouraging all eligible Californians to vote, understand, and engage in the political process. Farrell Decl. ¶¶ 8, 24; Stone Decl. ¶¶ 9, 18; McNenny Decl. ¶¶ 10, 18. Proposed Intervenor-Defendants' interests in (1) asserting the rights of their members to vote without risking their privacy, (2) advancing their non-partisan advocacy efforts, and (3) diverting their limited resources to educate members about increased privacy concerns, *see* Farrell Decl. ¶¶ 7, 8, 12, 19-20, 24-26; Stone Decl. ¶¶ 8, 12, 18-19; McNenny Decl. ¶¶ 9, 12, 18-19, are strikingly similar to interests courts have held are sufficient for intervention in other cases, *see, e.g.*, *Issa*, 2020 WL 3074351, at *3 ("[S]uch interests are routinely found to constitute significant protectable interests."); *see also, e.g.*, *Paher v. Cegavske*, No. 3:20-CV-00243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020). Proposed Intervenor-Defendants and their members and

volunteers have conducted voter registration drives and provided voters with information about how to register to vote and, when relevant to their voter education efforts, provided information about the confidentiality of voter data. Farrell Decl. ¶ 12; Stone Decl. ¶ 12; McNenny Decl. ¶ 12. Proposed Intervenor-Defendants have a vested interest in ensuring that this information remains valid, and that the significant resources it has devoted to education and outreach programs continue to be impactful and provide accurate information. *See* Farrell Decl. ¶¶ 23-26; Stone Decl. ¶¶ 18-19; McNenny Decl. ¶¶ 18-19.

Proposed Intervenor-Defendants' interests in carrying out their mission will be impaired as a practical matter if DOJ prevails. Farrell Decl. ¶ 24; Stone Decl. ¶ 18; McNenny Decl. ¶ 18. This is independently sufficient to satisfy the impairment requirement. *See, e.g.*, *Paher*, 2020 WL 2042365, at *2 (finding that intervenors' interests in promoting the franchise and the election of Democratic Party candidates would be impaired by plaintiff's challenge to Nevada's all mail election provisions); *see also SEC v. Navin*, 166 F.R.D. 435, 440 (N.D. Cal. 1995) (intervenor need only show "potential adverse impact" on the interest). To support their mission of increasing voter participation, Proposed Intervenor-Defendants have a strong foundational interest in preserving the trust of voters—including the trust of their members and volunteers—in the security of the voter registration process and the data that voters must provide through voter registration—and an adverse decision in this case would have significant harmful implications regarding voter privacy. *See* Farrell Decl. ¶ 24; Stone Decl. ¶ 18; McNenny Decl. ¶ 18; *see also Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897-98 (9th Cir. 2011) (finding that wilderness groups had significant protectable interest in "conserving and enjoying the wilderness character" of an area, which depended on provisions invoked in the case); *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) (explaining its prior holding that environmental groups were entitled to intervene "because they had the requisite interest in seeing that the

wilderness area be preserved for the use and enjoyment of their members"); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (finding that "there can be no serious dispute [regarding] . . . the existence of a protectable interest on the part of the applicant which may, as a practical matter, be impaired" where an "adverse decision in this suit would impair the [organization]'s [stated] interest in the preservation of birds and their habitats").

The claims and relief sought by DOJ in this action also threaten Proposed Intervenor-Defendants' legislative advocacy—including the privacy guarantees for which they have advocated. Farrell Decl. ¶ 19; *see also id.* ¶ 20 (LWVC support and opposition to bills regarding voter privacy and general data privacy). LWVC has advocated for legislation that reduces barriers to voter registration, protects voter data confidentiality and general data privacy, and limits laws, practices, and systems that risk the unnecessary or erroneous deactivation of voter registrations, *id.* ¶¶ 19-20—goals that conflict with the DOJ's stated intent of purging voters and collecting the sensitive information of individuals who have already had their voter registration cancelled. Such conflicting motivations bolster Proposed Intervenor-Defendants' interest in intervention. In analogous cases, the Ninth Circuit has frequently held that "a public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (granting intervention to environmental group to defend agency's action that the group had advocated); *see also, e.g., Sagebrush Rebellion*, 713 F.2d at 526-27 (granting intervention to wildlife organization to defend Department of Interior's creation of a wildlife habitat area, where the group had participated in the administrative process); *Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980) (granting intervention to women's rights organization to help a federal agency defend a policy that the organization had supported). In all of these cases, the court had no "difficulty

determining that the organization seeking to intervene had an interest in the subject of the suit." *Sagebrush Rebellion*, 713 F.2d at 527.

There can be no doubt that the rights and legal interests of Proposed Intervenor-Defendants would be directly impeded by the relief Plaintiff seeks.

## C.     Proposed Intervenor-Defendants' Interests Are Not Adequately Represented by the Existing Parties.

Proposed Intervenor-Defendants cannot rely on the existing parties to adequately represent their interests. Courts in this Circuit consider three factors in evaluating adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (cleaned up); *Sable Offshore Corp. v. County of Santa Barbara*, 2025 WL 2412147, at *5 (C.D. Cal. July 25, 2025). This is a "minimal" burden, and the intervenor need only show that the existing parties' representation of its interests "may be inadequate." *Citizens for Balanced Use*, 647 F.3d at 898.

Here, the Orange County Registrar of Voters will not adequately represent Proposed Intervenor-Defendants' interests. As the Ninth Circuit has explained, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Id.* at 899. Thus, while Registrar Page and Proposed Intervenor-Defendants may share an objective—defending against DOJ's attempt to forcibly compel production of sensitive, unredacted voter data— their "interests are neither 'identical' nor 'the same.'" *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 308 (E.D. Cal. 2011). For example, while Registrar Page is responsible for administering voter registration and voter list maintenance in Orange County, Proposed Intervenor-Defendants have distinct and

particular interests in ensuring that the privacy rights of voters that they serve are guaranteed, as well as ensuring that their shared organizational mission—including increasing voter participation and advancing pro-voter policies—is unimpeded. Government officials, like Registrar Page, broadly represent the public interest, not the particular concerns of Proposed Intervenor-Defendants. *See Boot Barn, Inc. v. Bonta*, 2023 WL 5155878, at *3 (E.D. Cal. Aug. 10, 2023) (finding that the government did not adequately represent the interests of advocacy organizations whose operations and memberships go beyond California's borders)*; see also Issa*, 2020 WL 3074351, at *3 (finding Democratic Party organizations had distinct interests from state officials in protecting voters' interests, advancing electoral prospects, and allocating the organizations' limited resources to inform voters).

No other party will represent Proposed Intervenor-Defendants' particular interests in this case, and there is no reason to think that Defendant will "undoubtedly make all of" Proposed Intervenor-Defendants' arguments or that Defendant will be "capable and willing to make such arguments." *Citizens for Balanced Use*, 647 F.3d at 898. Indeed, Proposed Intervenor-Defendants have a particular interest not just in advancing merits arguments that deny the DOJ's access to non-public information and confirm the legal validity of California's privacy laws *but also* highlighting the need for clear voter-friendly data disclosure rules, protecting data security, and ensuring that voter registrations and turnout are not reduced as a policy matter. *See* Farrell Decl. ¶¶ 10, 12, 19-21; Stone Decl. ¶¶ 12, 16; McNenny Decl. ¶¶ 12, 16. Defendant Page, by contrast, may seek to settle due to his office's competing interests or take positions that Proposed Intervenor-Defendants would not support. In fact, in order to "avoid a lawsuit," counsel for Defendant Registrar Page has already expressed openness to disclosing unredacted "sensitive information" to the DOJ if the DOJ would be "amenable to entering into a confidentiality agreement." *See supra* Background Part II, n.5; *see also* ECF No. 32 (notice of assignment of a panel mediator in this case). By

contrast, Proposed Intervenor-Defendants would not support disclosure of this sensitive voter information to the DOJ even under a confidentiality agreement. These potential divergences are enough to find that Proposed Intervenor-Defendants' interests may not be adequately protected by the existing parties. *See, e.g., Paher*, 2020 WL 2042365, at *3 ("Proposed Intervenors . . . have demonstrated entitlement to intervene as a matter of right" where they "may present arguments about the need to safeguard [the] right to vote that are distinct from Defendants' arguments"); *GHP Mgmt. Corp. v. City of L.A.*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (finding "[a]s an initial matter, Proposed Intervenors' very existence is premised on the notion that governmental policies have failed to secure economic or social justice, including housing stability, for Proposed Intervenors' members."); *cf. Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 2009 WL 5206722, at *3 (E.D. Cal. Dec. 23, 2009) (granting intervention where defendant state agency's "main interest is ensuring safe public roads and highways" and agency "is not charged by law with advocating on behalf of minority business owners" as intervenors would). Proposed Intervenor-Defendants have distinct interests in ensuring the privacy of sensitive voter registration information and preserving hard-fought successes in legislative advocacy that increased voter security and engagement—these interests will only be adequately represented if Proposed Intervenor-Defendants' motion to intervene is granted.

## II. In the Alternative, Proposed Intervenor-Defendants Should Be Granted Permissive Intervention Under Rule 24(b).

In addition to the requirements for intervention as of right, Proposed Intervenor-Defendants also satisfy the requirements for permissive intervention. The Court may permit intervention by a proposed intervenor who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The court may utilize its broad discretion to grant permissive intervention when the movant files "a timely

motion" and raises a claim or defense that shares "a common question of law and fact" with the "main action." *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011)). In exercising its discretion, a court must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Courts also consider other factors, including "the nature and extent of the intervenors' interest," the "legal position [the intervenors] seek to advance," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Here, all of these considerations favor granting permissive intervention. First, as explained above, Proposed Intervenor-Defendants timely sought intervention. *See supra* Argument Part I.A; *see also Crimson Pipeline Mgmt., Inc.*, 2013 WL 12246623, at *2 (granting permissive intervention where movant filed about a year after the complaint and two months after the scheduling order).

Second, Proposed Intervenor-Defendants' defenses share common questions of law and fact with the main action. "A common question of law and fact between an intervenor's claim or defense and the main action arises when the intervenor's claim or defense relates to the subject matter of the action before the district court," or, put differently, "when such claims or defenses are clearly a critical part of the instant case." *Republican Nat'l Comm. v. Aguilar*, 2024 WL 3409860, at *2 (D. Nev. July 12, 2024) (cleaned up). Proposed Intervenor-Defendants easily satisfy this requirement, as the applicable state and federal laws at issue are the same across parties, and Proposed Intervenor-Defendants seek to protect their core mission and sensitive voter registration data that, as a factual matter, Plaintiff DOJ is aiming to infringe by forcing unauthorized and unlawful disclosure.

1        Third, as explained above, there will be no prejudice to any existing party if

2  Proposed Intervenor-Defendants are permitted to intervene, nor will there be any

3  delay, because this case is still in the early stages, and the substantive deadlines in

4  the schedule adopted by this Court have not passed.  *See supra* Argument Part I.A.

5        As prominent non-partisan pro-voter and pro-democracy organizations with

6  a strong presence and history of voter registration and voter engagement, and

7  members and volunteers throughout California, including Orange County, *see*

8  Farrell Decl. ¶¶ 5-6, 12-18; Stone Decl. ¶¶ 5-7, 11-15; McNenny Decl. ¶¶ 6-8, 11-

9  15, Proposed Intervenor-Defendants have a unique and informed point of view that

10  would not otherwise be before the Court and that will aid the Court in its

11  consideration of the matter.  As such, there is no question that Proposed Intervenor-

12  Defendants "will significantly contribute to full development of the underlying

13  factual issues in the suit and to the just and equitable adjudication of the legal

14  questions presented."  *Sullivan v. Ferguson*, 2022 WL 10428165, at *4 (W.D.

15  Wash. Oct. 18, 2022) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d

16  1326, 1329 (9th Cir. 1977)).  The district court's decision in *Republican National*

17  *Committee v. Aguilar* is instructive on this point.  There, various groups sought to

18  intervene in a case where plaintiffs sought to "compel the State to remove from the

19  [voter] rolls voters whom they claim[ed were] ineligible" to vote.  2024 WL

20  3409860, at *3.  The court granted permissive intervention, finding that intervenors

21  would "contribute to the just and equitable resolution of the issues before" it

22  because they had a "singular purpose" of "ensur[ing] voters [were] retained on or

23  restored to the rolls," which provided a "counterbalance" to plaintiffs that the state-

24  defendant could not provide due to its "split mission" of "easing barriers to

25  registration and voting" and "protecting electoral integrity."  *Id.* at *3.  The same

26  reasoning applies here.  LWVC, LWVOC, and LWVNOC should be permitted to

27  intervene under Rule 24(b) to advance their members' rights, the rights and

28

interests of California voters that they serve, and their core missions, which Plaintiff's action threatens.

## CONCLUSION

For the foregoing reasons, the Court should grant Proposed Intervenor-Defendants intervention as of right under Rule 24(a), or in the alternative, permissive intervention under Rule 24(b).


Dated: November 14, 2025          Respectfully submitted,


                                  /s/ *Grayce Zelphin*
                                  Grayce Zelphin

                                  Counsel for Proposed Intervenor-Defendants

1

2

## CERTIFICATE OF COMPLIANCE

3

4    The undersigned, counsel of record for the League of Women Voters of

5    California, League of Women Voters of Orange Coast, and League of Women

6    Voters of North Orange County, certifies that this brief contains 6851 words,

    which complies with the word limit of L.R. 11-6.1.

7

8    DATED: November 14, 2025          /s/ *Grayce Zelphin*

9                                        Grayce Zelphin

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28